# TOM SPENCER v. STATE.

No. A-372.   Opinion Filed February 6, 1911.

(113 Pac. 224.)

1. **APPEAL—Record of Arraignment—When Immaterial.** Where the record shows that the defendant was present at the trial and was represented by counsel, that he pleaded not guilty, that he offered testimony in his own behalf, and the issues in the case were properly submitted to the jury, the fact that the record failed to show that the defendant was duly arraigned is immaterial.

2. **BURGLARY—Ownership of House—Evidence—Judicial Notice.** (a) Proof of any kind of rightful possession of the house burglarized as against the burglar is sufficient to sustain the allegation of ownership of such house.

    (b) Courts take judicial notice of the boundaries of counties and county lines and of the location of towns and cities therein.

3. **TRIAL—Instructions—Sufficiency.** The instructions must be considered as a whole, and, when considered altogether, if they fairly and correctly state the law applicable to the case, they will be sufficient.

4. **SAME—Refusal of Requests.** It is not error for the court to decline to give instructions requested by counsel for the defendant even when such instructions correctly state the law, if the court has already in the general instructions correctly given the law applicable to the case.

5. **APPEAL—Affidavit on New Trial—Record—Trial—Impeachment of Verdict.** (a) Affidavits in support of a motion for a new trial will not be considered on appeal unless such affidavits are properly incorporated in the record and duly certified to by the trial judge.

    (b) Jurors will not be permitted to impeach or contradict their verdict by affidavits or otherwise after they have been discharged from the jury and mingled with the public.

(Syllabus by the Court.)

*Appeal from District Court, Atoka County; A. T. West, Judge.*

Tom Spencer was convicted of burglary in the second degree, and his punishment was assessed at two years' confinement in the state penitentiary, and he appealed. Affirmed.

*J. M. Humphreys,* for appellant.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN, PRESIDING JUDGE.  First, Appellant complains that he was forced to trial by the court without arraignment and that he was not permitted to plead to the indictment.  The record discloses the fact that the defendant was first indicted for this offense on the 23d day of November, 1908, and that said indictment upon motion of the defendant was set aside on the 12th day of April, 1909, and that the defendant was held to await the action of the grand jury.  On the 17th day of April, 1909, the grand jury returned into open court the indictment upon which the defendant was convicted.  The defendant demurred to the indictment on the 19th day of April, 1909, which demurrer was by the court overruled.  It therefore appers affirmatively from the record that defendant had knowledge of the contents of the instrument.  The case was called for trial on the 22d day of April, 1909, when counsel for the defendant requested an attachment for an absent witness.  This was refused by the court upon the ground that said witness had never been served with a subpœna.  It also appears that the case went to trial without announcement of ready for trial or application for a continuance by either party.  Defendant was present and was represented by able counsel and assisted in the selection of the jury and in the examination of the witnesses.  It also appears that the defendant introduced a number of witnesses in his own behalf, and that he testified in his own behalf.  The instructions of the court, which under our statutes, constitute a part of the record, informed the jury that the defendant had pleaded not guilty.  Under these conditions, it is immaterial that the record fails to show that the defendant was formally arraigned.  This question was fully discussed and considered in the case of *Sam Wood v. State,* 4 Okla. 436, 112 Pac. 11.

Second. Defendant complains that the ownership of the building and the allegation in the indictment with reference to the location of the burglarized building were not proven.  This contention is not sustained by the record.  On the trial of this case, E. H.

Warren, a witness for the state, testified that the house burglarized belonged to J. B. Wyrick. This testimony was sufficient to sustain the allegation of ownership contained in the indictment. In cases of this kind possession which is rightful as against the burglar constitutes ownership. *Markham v. State,* 25 Ga. 52; *State v. Jaynes,* 78 N. C. 504; *Webb v. State,* 52 Ala. 422; *White v. State,* 49 Ala. 344. The indictment alleged that the building burglarized was the property of J. B. Wyrick, and that it was located about 6 miles east of Wapanucka, Okla., in Atoka county. The state's witness Warren further testified that the store burglarized was situated about 14 miles west of Atoka in the western part of the county. The courts of this state take judicial notice of the boundaries of counties and of county lines and the location of towns and cities therein. See *Riley Johnson v. State* (decided at the present term), *ante,* 112 Pac. 760. Therefore this court will take judicial notice of the fact that a point 14 miles west of Atoka is about 6 miles east of Wapanucka, and is in Atoka county. So the contention of counsel for the appellant falls to the ground. But, even if this were not the law, the allegation that the building burglarized was about 6 miles east of Wapanucka was purely surplusage, and it was not necessary to prove it at all. The material allegation was that the building was the property of J. B. Wyrick and was situated in Atoka county. This was fully proven by the testimony. That is all that the law requires. See *Reed v. State.* 66 Ark. 110, 49 S. W. 350; *Hamilton v. People,* 24 Colo. 301, 51 Pac. 425; *State v. Reid,* 20 Iowa, 413; *State v. Burdett,* 145 Mo. 674, 47 S. W. 895.

Third. We have carefully examined the instructions of the court in connection with objections thereto and criticisms contained in the brief of counsel for appellant. It is a fundamental principle of law that instructions must be considered as a whole, and, even if some paragraph in the instructions may not be as full as it should be, yet, if the law upon this subject is correctly given in some other portion of the instructions, it will be sufficient; provided that there are no contradictory statements contained in

the instructions upon material propositions. We must presume
that the jury was composed of men of at least ordinary intelligence,
and that they were capable of understanding the English lan-
guage. Some paragraphs of the court's charge are not as full as
they might be; but their deficiencies are supplied in
other parts of the instructions, and, taken as a whole, we find the
charge of the court does not contain any material errors.

Fourth. A great number of special instructions were re-
quested by the defendant. A number of them were given by the
court, but most of them were refused. Some of these requested in-
structions do not correctly state the law. Others are more favorable
to the defendant than the law permits. Others were not applicable to
the facts in the case, and those which were correct and applicable
to the case had been given in the general charge of the court to
the jury. We therefore find that the court did not err in refus-
ing to give the special instructions asked by the defendant which
were rejected by the court.

Fifth. The twenty-eighth ground in the motion of appellant
for a new trial is as follows:

"The jury received evidence outside of the courtroom, and,
after deliberating for 24 hours, decided the case upon one of the
facts as stated by the jury, that the defendant was seen upon the
streets of Atoka, in company with Edgar Miller, by members of
the jury, after they had been discharged by the court for the night,
and that, upon reassembly of the jury the next morning, this is
the evidence which finally brought about the verdict of guilty."

This motion for a new trial was not sworn to, but we find in
the record the affidavits of John McMurtry, J. J. Jenkins, and I.
E. Adams, who were jurors in the trial of this case touching this
matter. The affidavit of John McMurtry was verified on the 13th
day of May, 1909. The affidavit of J. J. Jenkins was verified on
the 11th day of May, 1909. The affidavit of I. E. Adams was
verified on the 10th day of May, 1909. The motion for a new
trial was filed in the district court of Atoka county on the 26th
day of April, 1909, and was overruled by the court on the 1st
day of May, 1909. There is no indorsement on these affidavits

showing that they were ever filed in the district court of Atoka county. So it is seen from the face of the record that these affi-davits were not verified until nearly two weeks after the motion for a new trial was overruled. There is a statement in the case-made certified to by the judge who tried this case that these affi-davits were not a part of the record. For these reasons we can-not consider this matter. But there is another ground which is decisive of this question. Jurors cannot be heard to impeach their verdict unless expressly authorized to do so by statute, and then only in the manner provided by statute. When jurors are im-paneled, they are sworn to decide the case submitted to them ac-cording to the law and the evidence. For a juror to make an affidavit that he has violated his oath and rendered a verdict upon any other ground than the sworn evidence in a case places him in contempt of court. In *Petitti v. State,* 2 Okla. Cr. 135, 100 Pac. 1123, this court said:

"The rule of law that juries cannot impeach or contradict their verdict after they have been discharged and have mingled with the public is based upon the highest considerations of public policy. It can only be done when permitted by statute, and then only as the statute may prescribe."

If, after being discharged and mingling with the public, jurors are permitted to impeach verdicts which they have ren-dered, judgments based upon verdicts of juries would rest upon a very uncertain foundation. Litigants against whom verdicts had been rendered would be continually importuning jurors and attempting to obtain from them affidavits upon which such ver-dicts could be assailed. This would result in perjury and bribery. There would be no end of litigation in cases tried before juries. Therefore, for the security of litigants, and to prevent fraud and perjury, as well as for the protection of the jurors themselves, courts will not allow jurors to impeach their own verdict unless they are permitted to do so by the express provisions of the stat-ute. We have no statute permitting this to be done.

Sixth. The evidence in this case on the part of the state, if

worthy of belief, conclusively proves that the defendant is guilty
of the burglary charged in the indictment. The evidence for the·
defense tended to establish an alibi. The jury saw and heard the
witnesses and were in a much· better condition to determine as to
who was worthy of belief than we are. We must therefore accept
their determination as conclusive ·of this question.

Finding no material errors in the record, the judgment of
the lower court is in all things affirmed.

ARMSTRONG and DOYLE, Judges, concur.