## CHARLES INKLEBARGER et al. v. STATE.

### No. A-1164.   Opinion Filed November 18, 1912.

### (127 Pac. 707.)

1.  **EVIDENCE—Circumstantial Evidence.** In cases of circumstantial evidence, the court should instruct the jury that the facts necessary to establish the conclusion of the guilt of the defendant must be proven by competent evidence and. beyond a reasonable doubt; and they must not only ·be consistent with the guilt of the defendant, but they must exclude, to a moral certainty, every other reasonable hypothesis except that of guilt.   That is all that the law requires in such cases.

2.  **TRIAL—Larceny—Instructions—Evidence to Support.** Where a defendant is charged with grand larceny, and there is no evidence introduced upon the trial which tends to reduce the offense to petit larceny, it is improper for the court to instruct the jury on petit larceny.

3.  **SAME—Alibi—Instructions—Necessity of Request.** Where a defendant is upon trial, and the defense of an alibi is relied upon, and the defendant does not request a special instruction upon this subject, and does not except to the action of the court in not charging on alibi, a conviction will not be reversed where such instruction is not given, unless it clearly appears from the record that the defendant was injured thereby.

4.  **SAME—Reasonable Doubt.** Where a defendant is upon trial for grand larceny, and the court instructs the jury that every ingredient thereof must be proven to their satisfaction, beyond a reasonable doubt, or they should acquit the defendant, the instruction will be sufficient.   If the defendant desires that the doctrine of .reasonable doubt should be applied to a special issue in the case, he should request an instruction to that effect.

5.  **TRIAL — Verdict — Specifying Decree.** Where a defendant is charged with grand larceny, and there is no evidence introduced tending to reduce the offense to petit larceny, and the court submits no instruction upon this subject, a verdict of the jury finding the defendant guilty as charged will be sufficient, without specifying the degree of larceny of which he is convicted.

6.  **APPEAL—Harmless Error.** Where a defendant is upon trial for grand larceny of a number of different articles of the value of more than $20, incompetent evidence admitted as to the value of some of the articles alleged to have been stolen will not be reversible error, when there is no question but that the other articles alleged to have been stolen exceed in value the sum of $20.   The reception of such incompetent evidence is clearly harmless error.

(Syllabus by the Court.)

*Appeal from District Court, Comanche County;*
*J. T. Johnson, Judge.*

Charles Inklebarger and Frank Bridwell were convicted of grand larceny, and appeal. Affirmed.

Abraham Blott testified that he was engaged in the butcher, meat market, and restaurant business in Sterling, Comanche county, Okla., during the year 1910; that on the 15th day of February, 1910, witness had six cattle hides in a barrel setting between his house and the barn on his premises in Sterling; that he missed these hides on the morning of the said 15th day of February, 1910, witness had six cattle hides in a barrel sitting between his marks, etc. Witness also missed a saddle, which was taken from his barn. Witness sent out postal cards with a description of the stolen hides and saddle on them. In reply to these postal cards, Mr. R. W. Caldwell of Lawton notified witness that he had such hides. Witness went to Lawton and identified the hides in Caldwell's possession as being the hides stolen from witness. The defendants were arrested, charged with the theft of the hides. Witness was present when they were brought before Mr. Wilson, the man from whom Mr. Caldwell had purchased the hides. Witness never recovered his saddle. The hides and saddle were taken without the consent of witness and against his will. The market value of the hides was $25 at the time they were stolen. The saddle was worth $25 at the time it was stolen.

C. L. Wilson testified: That he resided at Hulen; kept a general store there. That on the 18th day of February, 1910, he saw the appellants. Witness purchased five hides from the appellants at that time. They appeared to have been cured in a barrel. Appellants told witness that the hides were taken from cattle that had frozen to death in a stock field. The appellants had a saddle in the wagon, as well as the hides. Witness afterwards sold these hides to Mr. Caldwell, in Lawton. Witness afterwards saw the appellants and identified them positively as the parties who sold the hides in question to witness.

Mrs. Mildred Wilson testified that she was the wife of the preceding witness. She identified the appellants as the persons

who had sold the hides in question to her husband. She further testified that the hides were afterwards sent by Mr. Wilson to Lawton.

R. W. Caldwell testified that he was in the hide and fur business in the town of Lawton, Comanche county, Okla.; that in the latter part of February, 1910, he received a notice from Mr. Blott with reference to some hides stolen from him; that witness paid Mr. Wilson $20.30 for the five hides purchased from him; that Blott came to witness' place of business and identified the hides.

Fred. Weicher testified that he was acquainted with Mr. Abraham Blott; that witness lived about a mile from Sterling; that witness sold some hides to Mr. Blott; that witness knew the animals the hides came off of. Witness afterwards saw these hides and identified them at the hide house of Mr. Caldwell in Lawton. They were the same hides witness had sold Mr. Blott. Witness identified the hides by their color, and also by the figure 8 on them, which was on the left hip.

Pete Weicher, a brother of the preceding witness, testified substantially to the same facts that were testified to by his brother.

C. B. Inklebarger, one of the appellants, testified in his own behalf: That he resided near Baird post office, in Comanche county, Okla. He had lived there about eight months. On the 15th day of February, 1910, witness was at home, about 24 miles from Sterling. Witness had been at Sterling early in February. He drove down in a wagon with his father. That from this time until he was arrested witness did not go to Sterling, but was at home working on the farm.

Appellant Frank Bridwell testified in his own behalf: That he lived at Sterling, Okla. Witness had nothing to do with the theft of the hides in question. Witness does not remember where he was at that time. Witness did not sell the hides in question to Mr. Wilson. Witness never had anything to do with the hides belonging to Mr. Blott.

M. L. Inklebarger testified that one of the appellants was his son; that witness was a farmer; that the appellant Charles Inklebarger was at home working on the farm on the 15th day of February, 1910.

Robert Inklebarger testified that he resided 22 miles from Sterling. During the entire week in which the hides were stolen, appellant Charles Inklebarger was at home working on the farm. If he left at any time, witness did not know it.

John Fryman testified that he resided at Sterling; that he did not see Charles Inklebarger and Frank Bridwell around Sterling on the day the hides belonging to Mr. Blott were stolen.

Toney Fryman testified: That he resided at Sterling; knew both of the appellants. That he did not see either of the appellants at Sterling on the day the hides were stolen.

Jim Inklebarger testified that he resided at Sterling; that after Charles Inklebarger left Sterling in the early part of February he did not return until after he was arrested; that Charles Inklebarger left Sterling between the 1st and 10th of February, but could not say just when he left.

Ed Fryman testified for appellants: That he resided at Sterling; was acquainted with both of appellants. That witness was in Sterling at the time the Blott hides were stolen. That witness did not see either of appellants there at that time.

*B. M. Parmenter,* for appellants.

*Charles West,* Atty. Gen., and *Smith C. Matson* and *C. J. Davenport,* Asst. Attys. Gen., for the State.

FURMAN, P. J. (after stating the facts as above.) First. The first question presented in the brief of counsel for appellants is that the court erred in instructing the jury as follows:

"You are instructed that the state relies for a conviction in this case upon circumstantial evidence; and, in order to warrant a conviction of crime on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proved by competent evidence, beyond a reasonable doubt. All the facts (that is, the necessary facts to the conclusion) must be consistent with each other and with the main fact sought to be proved; and the circumstances, taken together, must be of a conclusive nature, leading, on the whole, to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty that the accused, and no other person, committed the offense charged. But in such cases it is not sufficient that the circumstances coincide

with, account for, and therefore render probable, the guilt of the defendant. They must exclude, to a moral certainty, every other reasonable hypothesis."

Counsel for appellants did not request an additional instruction upon the subject of circumstantial evidence; neither have they cited any authority in their brief in support of their attack upon the instruction given, but content themselves with saying:

"We submit that under this instruction, so far as applicable to the circumstantial evidence, the jury could have found for the state, if the conclusion was satisfactory to them. This court has so often sustained the rule that the guilt must be proven beyond a reasonable doubt, before there can be a conviction, it would be superfluous to cite authorities along that line."

We cannot agree with counsel for appellants that this instruction authorized the jury to convict the appellants, if the conclusion of guilt was satisfactory to them; for the instruction directly tells them in express language that each fact necessary to the conclusion of guilt must be proven by competent evidence and beyond a reasonable doubt, and that all the facts in evidence, taken together, must exclude, to a moral certainty, every other reasonable hypothesis except that of guilt.

Substantially the same instruction as that complained of was approved by Mr. Justice Winslow of the Supreme Court of Wisconsin in the case of *Colbert v. State,* 125 Wis. 423, 104 N. W. 61. The instruction there approved was in the following language:

"All the evidence produced by the state is circumstantial. There is no direct or positive evidence that the defendant committed the crime charged. And to warrant a conviction on circumstantial evidence each fact necessary to the conclusion sought to be established must be proven by competent evidence, beyond a reasonable doubt, and all the facts necessary to such conclusion must be consistent with each other and with the main fact sought to be proved; and the circumstances, taken together, must be of a conclusive nature, leading, on the whole, to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty that the accused, and no other person, committed the offense charged. The mere union of a limited number of independent circumstances, each of an imperfect and inconclusive character, will not justify a conviction. They must be such as to generate and justify full belief, according to the standard rule of certainty. It is not sufficient that they coincide with and render probable the

guilt of the accused; but they must exclude, every other reasonable hypothesis. No other conclusion but that of the guilt of the accused must fairly and reasonably grow out of the evidence; but the facts must be absolutely incompatible with innocence, and incapable of explanation upon any other reasonable hypothesis than that of guilt."

We feel that much in the instruction given, and also in the instruction approved by Mr. Justice Winslow, might be omitted. In order to warrant a conviction upon circumstantial evidence, all that the law requires is that the circumstances proven to be true must not only be consistent with the guilt of the defendant, but must also be inconsistent with his innocence. This is fully embraced in the instruction given. At the same time we do not regard this instruction as a model.

Second. In their brief counsel next contend that the court erred in not instructing the jury with reference to petit larceny. Section 2594, Comp. Laws 1909, is as follows:

"Grand larceny is larceny committed in either of the following cases: 1. When the property taken is of value exceeding twenty dollars. 2. When such property, although not of value exceeding twenty dollars in value, is taken from the person of another. Larceny in other cases is petit larceny."

In the case now before us, there was no conflict in the evidence. Even if it be conceded that the state was limited to the five hides which were sold by appellants to the state's witness Wilson, and the other property stolen was excluded entirely from consideration, it was proven by the testimony of Mr. Caldwell that he paid $20.30 for these five hides; while the witness Blott testified that the six hides stolen were of the value of $25, and that the saddle was of the value of $25. So that this is either a case of grand larceny or nothing. Had a single witness testified that the property stolen was worth $20 or less, then it would have been the duty of the court to charge upon petit larceny; but it is never the duty of the court to charge upon a lesser degree of an offense than that charged, unless there is evidence in the record from which the jury could reasonably find the defendant guilty of such lesser degree. An instruction should never be given upon any question of law which is not applicable to the evidence.

See *Atchison v. State,* 3 Okla. Cr. 295, 105 Pac. 387. The court therefore did not err in refusing the charge on petit larceny. The verdict of the jury is responsive to the information and the testimony. There is no word of evidence in the record which would justify a verdict for petit larceny.

Third. In their brief counsel for appellants complain of the action of the court in giving the following instruction:

"You are instructed that if you find and believe from the evidence, beyond a reasonable doubt, that the defendants, Charles Inklebarger and Frank Bridwell, did, at the time and place stated in the information, willfully, unlawfully, and feloniously, by stealth, steal, take, and carry away, without the consent and against the will of the true owner, the property described in the information, and you further find that the property was of value exceeding $20, and that the same was the personal property of A. Blott, and you further find that the defendants took the same, as charged in the information, with the unlawful and felonious intent of them, the said Charles Inklebarger and Frank Bridwell, to deprive the true owner of the value therof, and to appropriate the same to their own use and benefit, and you so find, you will return your verdict, finding the defendants guilty as charged in the information."

When this case was upon trial, and after the county attorney had stated the case for the state, counsel for appellants, when called upon to state his defense, addressed the court and jury as follows:

"If the court please, gentlemen of the jury, on the part of the defense, we deny that we took the hides or saddle, or had anything to do with them, and that an attempt to settle it on these boys is a question of mistaken identity. That is about the line of the defense."

He did say one single word about an alibi. After the evidence was through, counsel did not request any instruction upon the law of alibi, neither did he except to the action of the court in not charging more fully upon this subject.

In the case of *Beatty v. State,* 5 Okla. Cr. 107, 113 Pac. 237, this court said:

"Upon the trial of this cause, the court repeatedly instructed the jury that they could not convict the defendant, unless they were satisfied from the testimony, beyond a reasonable doubt, that

he was guilty, and they were again instructed that if they entertained a reasonable doubt as to whether or not the defendant was guilty they must acquit him; but the defendant complains that the court did not instruct the jury upon the presumption of innocence.    No exception was reserved to the instructions of the court upon this ground, and no special instruction was requested of the court upon the presumption of innocence.    In the case of *Cochran v. State,* 4 Okla. Cr. 390, 111 Pac. 978, we held that, under these circumstances, a conviction would not be reversed because the court had failed to charge the jury upon the presumption of innocence.    Section 6857, Comp. Laws Okla. 1909, is as follows:    'In charging the jury, the court must state to them all matters of law which it thinks necessary for their information in giving their verdict, and if it state the testimony of the case it must in addition inform the jury that they are the exclusive judges of all questions of fact.    Either party may present to the court any written charge, and request that it be given.    If the court thinks it correct and pertinent, it must be given, if not, it must be refused.    Upon each charge presented and given or re-.fused the court must indorse or sign its decision.    If part of any written charge be given and part refused the court must distinguish, showing by the indorsement or answer what part of each charge was given and what part refused.'    According to this statute, it is the duty of the court to instruct the jury upon all matters of law which it thinks necessary for their information in giving their verdict, and, if the court omits to charge the jury upon any question of law which counsel for defendant thinks necessary for their information, it is their duty to request such instruction; and when they fail to do this a conviction will not be reversed, unless it appears from the record that the defendant was injured by the failure of the trial court to give a proper instruction upon the law of the case.    The only purpose of an instruction upon the presumption of innocence is to inform the jury that, in the first instance, the burden is on the state to prove by legal evidence that the defendant is guilty, and that, if the state does not prove the defendant guilty by legal evidence, the defendant is entitled to be acquitted.    This idea was contained in separate paragraphs in the charge of the court, first, where the court told. the jury that they must be satisfied of the defendant's guilt by legal evidence, beyond a reasonable doubt, before they could convict him; in the second place, where the court informed the jury that if they entertained a reasonable doubt from the evidence of the guilt of the defendant they must acquit him."

Upon an examination of the record, we do not believe that appellants were injured by the failure of the court to give a special instruction upon the subject of alibi. The appellant Bridwell did not introduce any evidence of an alibi. He testified:

"Q. Frank, do you know where you were on or about the 15th of February, Tuesday? A. No, sir; I couldn't swear where I was. Q. Were you there at Sterling? A. I don't know. I may have been at Sterling, and I may not have been."

The failure of the court to charge as to the defense of an alibi could not affect appellant Bridwell, because he interposed no such defense.

C. B. Inklebarger, one of the appellants, testified:

"Q. Where do you live? A. Two miles south of Baird post office. * * * Q. Where were you on or about the 15th day of February, 1910? A. The 15th day? Q. Yes, sir; Tuesday. A. I was there on the place. Q. Where you were living? A. Yes, sir. Q. How far was that from Sterling? A. It is 24 miles."

This appellant introduced as witness to support his defense of an alibi his father, M. L. Inklebarger, his brother Robert, his brother Jim, and Toney, Ed, and John Fryman. The latter three witnesses testified they lived in Sterling; and did not see appellant at the time of the larceny of the hides. The evidence is incompetent, immaterial, and proves nothing. The fact that they did not see appellant there does not prove he was not there. The Inklebargers testified that appellant was down on the farm, 22 or 24 miles south, before, on, and after February 15th. They do not agree as to when he went there, or when he went to Sterling thereafter. There is no evidence that appellant could not have been at the farm on the day of February 15th, and at the prosecuting witness' house that night, or during the night the property was stolen. The distance was 22 or 24 miles, and appellant could have been at both places within a day's time. The evidence showing defendants' guilt is so clear that a jury could not, upon their oaths, return a verdict different from the verdict of guilty returned. The appellants were identified; the property was identified; the court instructed the jury upon circumstantial evidence, presumption of innocence, and reasonable doubt. The ap-

pellants requested no instruction upon the defense of alibi, and in this case they ought not to be permitted to contend that the court erred. Under these conditions the question of alibi was sufficiently covered by the instruction given.

In *State v. Shroyer,* 104 Mo. 441, 16 S. W. 286, 24 Am. St. Rep. 344, the court said:

"(5) Complaint is made that the court did not instruct the jury 'on the effect of the evidence tending to prove an alibi.' Without going into a consideration of the scope of that provision of the statute imposing upon trial courts the duty of instructing the jury upon all questions of law 'which are necessary for their information in giving their verdict,' we deem it sufficient to say that the jury needed no information; and it was not necessary to instruct them that, if defendant was not present at Murphy's house on the occasion of the assault, he was not guilty of making the assault. The general instruction given to the jury, that if they had a reasonable doubt of defendant's guilt they should acquit him, sufficiently covered the law arising on the 'effect of the evidence tending to prove an alibi.' No error being found in the record, the judgment is affirmed. All concur."

In *Schultz v. State,* 88 Neb. 613, 618, 130 N. W. 105, loc. cit. 107 (34 L. R. A. [N. S.] 243), the Supreme Court of Nebraska, speaking as to this question, said:

"The court did not err in refusing to give the instructions requested concerning an alibi. The accused admits being in the immediate neighborhood of the mill at the time it was burglarized. The court, at the request of the accused, instructed the jury that 'to warrant a conviction each fact necessary to establish the guilt of the accused must be proven by competent evidence, beyond a reasonable doubt; and the facts and circumstances proven should not only be consistent with the guilt of the accused, but inconsistent with any other reasonable hypothesis or conclusion than that of guilt.' The court also minutely defined all the elements of the crime of burglary, and told the jury that the accused was presumed to be innocent until proven guilty beyond all reasonable doubt; that if the state failed to thus establish a single element of the crime they must acquit; and that it was their duty, if possible, to reconcile the testimony with the presumption of innocence. The jury, therefore, assisted, as they were, by the instructions, must have understood that if the accused was in or near the station closet at the time Heidulk saw the burglar within the mill Schultz could not be guilty; and, further, that, if they had

any reasonable doubt that Heidulk could or did accurately identify the accused as the guilty person they should acquit. There was therefore no prejudicial error in not giving the instruction requested. *State v. Shroyer,* 104 Mo. 441, 16 S. W. 286, 24 Am. St. Rep. 344."

There are many cases holding that, where the defendant interposed as a defense an alibi, the court must instruct the jury thereon, whether asked or not; yet in this case the instructions given to the jury fairly present the questions involved, and the error, if any, in not giving such an instruction, when not requested by the defendant, is harmless; and, as the court repeatedly holds, before a conviction will be set aside, it must appear from the record that a defendant has been deprived of some substantial right. If the court fails to instruct the jury upon a question of law which counsel for defendant thinks necessary for their information, it is their duty to request such instruction; and when they fail to do so a conviction will not be reversed, unless it appears from the record that the defendant was injured.

Fourth. It is next contended that the court erred in giving the following instruction:

"You are instructed that if you find and believe, beyond a reasonable doubt, that the defendants, Charles Inklebarger and Frank Bridwell, did, at the time and place stated in the information, willfully, unlawfully, and feloniously, by stealth, steal, take, and carry away, without the consent and against the will of the true owner, the property described in the information, and you further find that the property was of value exceeding $20, and that the same was the personal property of A. Blott, and you further find that the defendants took the same, as charged in the information, with the unlawful and felonious intent of them, the said Charles Inklebarger and Frank Bridwell, to deprive the true owner of the value thereof, and to appropriate the same to their own use and benefit, and you so find, you will return your verdict, finding the defendants guilty as charged in the information."

It is contended that this instruction did not require the jury to find, beyond a reasonable doubt, that the property was taken with the "felonious intent to deprive the owners thereof." This objection is too technical, in view of the decisions of this court, for the reason that the instructions must be considered as a whole. In other instructions the court charged the jury that:

"(1) The defendants are presumed to be innocent of the crime charged against them in said information, and of every ingredient thereof, until the contrary is shown to the satisfaction of your minds, beyond a reasonable doubt. (2) Further, that each fact necessary to the conclusion sought to be established must be proved by competent evidence, beyond a reasonable doubt."

The court defined grand larceny, and stated the facts and ingredients necessary to be proved. The instructions, taken as a whole, clearly instructed the jury that they must find, beyond a reasonable doubt, the facts and ingredients of the charge. Nothing further was necessary. The defendant is not permitted to pick out a certain instruction and ask the court to pass upon its correctness separate and apart from the instructions as a whole. The contention is without merit. See *Spencer v. State,* 5 Okla. Cr. 7, 113 Pac. 224.

Fifth. It is next contended that the court erred in accepting the verdict, because, it is contended, the verdict did not state the value of the property stolen. The verdict reads:

"We, the jury, impaneled and sworn to try the issues in the above-entitled cause, do, upon our oaths, find the defendants, Charles Inklebarger and Frank Bridwell, guilty as charged in the information."

The defendants did not object to the court's receiving the verdict. They remained silent. Had they supposed the verdict was irregular, they should have taken some steps at the time it was returned to ascertain and correct the error. But the verdict was not irregular or improper. The defendants were charged with grand larceny. The court instructed the jury that grand larceny is larceny of property of a value exceeding $20. There was no evidence whatsoever that the property stolen (whether they found the defendants stole the saddle and six hides, or the six hides, or five hides) was less than $20. The offense was grand larceny. The value of the property was immaterial, so long as its value exceeded $20.

"While the value of the goods taken determines the grade of the offense, and the value must be alleged in an indictment for grand larceny and proved in order to convict, it is usually held unnecessary for the jury in its verdict to find the value; a general

verdict of guilty being a finding that the goods taken were of the value alleged." (25 Cyc. 157).

See, also, *State v. James County,* 117 La. 419, 41 South. 702; *State v. Kelliher,* 32 Or. 240, 50 Pac. 532; *People v. Perez,* 87 Cal. 122, 25 Pac. 262; *People v. Price,* 67 Cal. 350, 7 Pac. 745; *People v. Whitely,* 64 Cal. 211, 27 Pac. 1104; *Cargill v. State,* 76 Ark. 550, 90 S. W. 618; *Keller v. Davis, Warden of Penitentiary,* 69 Neb. 494, 95 N. W. 1028.

Sixth. It is further contended that the court erred in permitting the witness Blott to answer this question:

"Q. Do you know what was the market value of the saddle? A. Yes, sir. (Objected to by the defendants, for the reason that it is incompetent, irrelevant, and immaterial, no proper foundation laid for the asking of the question, and the witness not shown himself qualified ¡to testify. Overruled. Exceptions.) A. It was worth $25, the saddle was. (Here defendants move to strike the answer as not being responsive to the question, which was ·by the court overruled.) Q. What is the market value of the saddle at the time? Just answer what the market value is. (Objected to by defendants, for the reason it is repetition. Objection by the court sustained.)"

By this objection, in the form it was put, defendants conceded that the answer of the witness as to the value of the saddle was the market value. The witness had stated that he was. 'acquainted with the market value of the saddle at the time it was taken. Doubtless counsel for the state, on defendant's objection that the answer as to the value was not responsive to the question, desired to put the matter of value clearly before the jury by a direct question, but on putting the question was met with the objection that it was repetition. The ruling was correct. But, though the court may have erred in admitting the answer as to the value of the saddle, it was immaterial and harmless, for the reason that the value of the hides was shown to be in excess of $20, and the evidence clearly established the guilt of the defendants. *Edwards v. State,* 5 Okla. Cr. 20, 113 Pac. 214.

The jury were the exclusive judges of the credibility of the witnesses, and, having accepted the testimony of the witnesses for the state as true, this settles all conflicts in the evidence.

We find no material error in the record. The judgment of the lower court is therefore affirmed.

DOYLE, J., concurs; ARMSTRONG, J., absent, and not participating.