## ELMER ALBERT DUNN v. STATE.

No. 2923.    Opinion Filed November 25, 1918.

(176 Pac. 86.)

1. **PERJURY—Indictment and Information—Allegations.** In an information for perjury, the perjury may be alleged in the false swearing as to several different statements, provided the alleged false statements were testified to in the same trial by the defendant charged with the perjury, without rendering such information subject to demurrer.

2. **SAME—Different False Statements—Conviction.** In an information charging perjury to have been committed in two different statements in the same trial, a conviction may be properly had upon legal proof of the defendant's having corruptly and knowingly testified as to either one of the said false statements.

3. **CONTINUANCE—Absence of Witness—Requisites of Motion.** A motion for a continuance on account of absent witnesses, which fails to show diligence to secure the attendance of such witnesses, and what said witnesses would testify to, if present, and that the said testimony cannot be had from other witnesses, is properly overruled.

4. **PROSECUTING ATTORNEYS—Employment of Attorney at Law.** An attorney at law may be legally employed to aid and assist a county attorney in the prosecution of a criminal offense.

5.    **TRIAL—Failure to Testify—Instruction.** A requested charge of a defendant, who did not testify in the trial, that the jury be instructed not to consider his failure to testify as a circumstance against him, is properly refused.

6.    **TRIAL—Argumentative Instructions.** It is not error for the court to refuse requested instructions which are argumentative.

7.    **FORMER JEOPARDY—Plea of Former Conviction—Identical Offense.** In a prosecution for perjury, a plea of former conviction for larceny in the case in which the perjury ·was alleged to have been committed was properly excluded, as the conviction was not for the identical offense charged in the present case.

*Appeal from District Court, Blaine County;*
*Thomas A. Edwards, Judge.*

Elmer Albert Dunn was convicted of perjury, his motion for new trial was overruled, and he brings error. Affirmed.

*J. P. Wishard,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty Gen., for the State.

ARMSTRONG, J.   The plaintiff in error, hereinafter referred to as defendant, was convicted of the crime of perjury, and sentenced to be imprisoned at hard labor in the state penitentiary at McAlester, Okla., for a period of ten years.   Motion of defendant for new trial being overruled, he prosecutes this appeal by case-made.

The amended information upon which the defendant, was tried charges:

"That on or about said 14th day of January, 1915, a certain criminal action No. 823 was pending in the district court of Blaine county, state of Oklahoma, and undetermined, at Watonga, in said Blaine county, wherein the state of Oklahoma was plaintiff, and the said Elmer Albert Dunn was defendant, and wherein the said state of Oklahoma prosecuted the said Elmer Albert Dunn on informa-

tion charging that on the ———— day of November, in the year of our Lord nineteen hundred and twelve, at and within said county and state, the said Elmer Albert Dunn did then and there unlawfully, willfully, intentionally, knowingly, wantonly, maliciously, and feloniously, and by stealth, take, steal, and drive away certain personal property, to wit, two black mares, which said black mares were then and there the property of, and owned by, one William Fletcher, and were then and there in the possession of one Lump Mouth, and against the will and without the consent and without the knowledge of him, the said William Fletcher, or of him, the said Lump Mouth, and with the unlawful and felonious intent on the part of him, the said Elmer Albert Dunn, then and there to deprive the owner, the said William Fletcher, and the said Lump Mouth, thereof, and with the unlawful and felonious intent on the part of him, the said Elmer Albert Dunn, then and there to convert the said two black mares to the use and benefit of him, the said Elmer Albert Dunn, contrary to the form of statute in such case made and provided, and against the peace and dignity of the state.

"And on or about said 14th day of January, 1915, in said Blaine county, the said criminal action No. 823 was on trial in said district court with the Honorable Thomas A. Edwards, regular judge of said district court, presiding, and the Honorable E. R. Taylor, court clerk of said Blaine county, present and acting as clerk of said district court, and the said district court then and there had jurisdiction to try and determine said criminal action and the issues involved therein, and the name of the said defendant appeared variously in the papers, files, records, and proceedings therein, as Elmer Albert Dunn, Albert Elmer Dunn, E. A. Dunn, A. E. Dunn, Elmer Dunn, and Jack Dunn, but all such names being names of one and the same identical person, to wit, the defendant herein, and the defendant in said criminal action No. 823.

"And on or about said 14th day of January, 1915, in said Blaine county, when said criminal action No. 823 was on trial before said court as aforesaid, the said Elmer

Albert Dunn having taken an oath on said trial and before said court as a witness in his own behalf that he would testify as such witness on such trial to the truth, the whole truth, and nothing but the truth, said oath having been taken by the said defendant before and administered by, the said E. R. Taylor, court clerk of said Blaine county, and acting as clerk of said district court, in open court and before said court, he, the said E. R. Taylor, as such court clerk being then and there duly qualified and authorized to administer such oath and the same to the said defendant, and the said defendant then and there willfully, unlawfully, knowingly, falsely, corruptly, and feloniously, and while under such oath, and contrary to such oath, and after he had taken such oath, and the same had been administered to him as aforesaid, and on or about the 14th day of January, 1915, in said Blaine county, on the trial of said criminal action and said charge of felony, did take the witness stand as a witness in his own behalf, and testify and state as follows, to wit:

"That he, the said defendant, bought the said black mares on the 21st day of November, 1912, from an Indian who gave his name as Elick Bird, and that he, the said defendant, gave the said Indian a check for said mares in the sum of one hundred fifty dollars ($150.00), and that said Indian brought said check to the defendant at the stockyards in Greenfield, Blaine county, state of Oklahoma, on Monday, November 25, 1912, and that said Indian on the last-named date indorsed said check by writing the name of Elick Bird on the back thereof in the Greenfield State Bank, and that said defendant gave said Indian an indelible pencil with which to write his name on the back of said check, and saw him, the said Indian, write his name on the back of said check in said bank, and on said last-named date he, the said defendant, gave the said Indian in said bank the sum of one hundred fifty dollars ($150.00), and that he, as the defendant, and S. E. Sutherland, sheriff of said Blaine county, and said William Fletcher were on the train coming home from Little Rock; that the said defendant and the said William Fletcher

went into the smoking car, and the said William Fletcher said to the said defendant, 'I don't believe you stole these mares, and you don't act like you were guilty, and if you will give me $40 more for my expenses I will say no more about it, and not prosecute this case;' and that the said defendant did not testify or state under oath at the former trial of said criminal action No. 823 in said district court on September 14th, in answer to the question as follows, to wit. * * *

"That all of said testimony and statements so made and given by the said defendant as aforesaid were material to the questions in issue, and to the questions and issues to be tried and determined and joined on said trial, and in said criminal action No. 823, and were false, and were so made and given corruptly, and were known to the said defendant to be false at the time they were so testified to and stated by the said defendant as aforesaid, in this, to wit. * * *"

The defendant moved for a continuance upon the ground of the absence of the witnesses Morrissey and Brent, which was overruled, and the defendant insists that the court committed prejudicial error in overruling the said motion. We have carefully examined said application for continuance, and are of the opinion that the court did not abuse its discretion in overruling said motion, for the reason that due dilligence was not shown to secure said witnesses, and that, in addition, said application does not show what the testimony of such absent witnesses would be, or that the same facts which would be given by said witnesses could not be had by other witnesses.

"Application for continuance in a criminal case on account of the absence of witnesses which fails to show that due diligence has been used to secure the attendance of said witnesses and which does not show that the same facts cannot be proved by other witnesses, is not suf-

ficient." *(Katie Mosley v. State,* 12 Okla. Cr. 402, 157 Pac. 708.)

In *Boswell v. State,* 8 Okla. Cr. 156, 126 Pac. 828, it is said:

"It is the settled rule of this court that an application for a continuance is addressed to the discretion of the trial court, and that the refusal of the court to grant a continuance will not be reversible error upon appeal, unless upon an examination of the entire record it appears that appellant was deprived of some substantial right thereby, to his injury. An application for a continuance should state the name and place of residence of each absent witness. It should then allege that due diligence has been used to secure the attendance of said witness and should disclose the diligence as to each witness by stating the time at which the subpœna was issued, and when and by whom served, and that the witness was summoned to be present at the time of trial. * * * The motion should allege in general terms that the testimony of the absent witness is material and set out the facts expected to be proven by each absent witness and it must also contain such statements as will show that such expected evidence is both competent and material. If the testimony of the absent witness cannot be procured from any other source, this fact should be stated. If it can be procured from some other source, the motion should contain a statement as to why it was not so obtained. But, if such absent testimony can be obtained from some other source, the motion must state the special facts which in reason and justice would entitle the defendant to continuance in order to enable him to obtain cumulative evidence. A motion which does not comply with either of these requirements is bad upon its face."

The defendant demurred to the information upon the grounds:

(1) That said information does not state facts sufficient to charge an offense against the defendant under the laws of the state of Oklahoma.

(2) Said information does not state facts sufficient to constitute any crime known or punishable under the laws of the state of Oklahoma.

. (3) That said information is too indefinite and uncertain, and does not sufficiently apprise this defendant of the true nature of the offense against which he is required to defend.

(4) That said information is not sufficient in its charge, or specific and definite to the extent of informing him of the nature of the offense concerning which he is to defend, as provided by the Constitution of the United States.

It is earnestly argued in brief of the defendant that more than one offense is charged in the information, and this argument, we think, is without force. It is true that the information charges in one count several false statements, and this, we think, may be legally done, where said statements are made in the same proceeding or trial.

"An indictment for perjury may embrace a single count all particulars in which defendant is alleged to have sworn falsely, but each fact sworn to should be set in a distinct and separate assignment, and each traversed, so that, if either assignment is proved, the indictment may be sustained. If one assignment of perjury is sufficient, an improper assignment in connection with it will not vitiate the indictment. The fact that an indictment charges two distinct false statements under oath does not render the indictment bad, if the statements of both were given under oath and in one proceeding." (30 Cyc. p. 1439 [9].)

It is true that the information in this case is unnecessarily prolix, but it sufficiently covers the elements of the offense of perjury, by alleging:

(1)    A jurisdictional proceeding.

(2)    That the defendant was sworn to give evidence therein.

(3)    His testimony.

(4)    Its falsity.

(5)    Its materiality as to the issue.

In short, the information fully avers each element necessary to constitute the offense of perjury, and gave the defendant notice of the offense with which he was charged, and this is all that was necessary, and the court did not commit error in overruling the, demurrer to the information.

In *Teague v. State,* 13 Okla. Cr. 270, 163 Pac. 954, it is held:

"An information is sufficient, if it pleads every element essential to charge the crime pleaded in plain, concise, and intelligible language, and apprises the defendant in an intelligible way of precisely what he must be prepared to meet."

The defendant filed a plea of former conviction, based upon his conviction for larceny in the identical case in which the perjury in the instant case is alleged to have been committed, and the court refused to permit said plea to be filed, as said conviction was not for the identical offense charged in the information in the instant case. We are of the opinion that the said plea of former conviction is without the slightest merit, and the court did not err in refusing to permit such plea to be filed.

It is earnestly contended by the defendant that the evidence is insufficient to support the verdict of the jury, and with this contention we cannot agree. The evidence

in this case is very voluminous, and we deem it unnecessary to set out the same in detail. The evidence conclusively shows that the defendant was on trial in the district court of Blaine county for the larceny of two mares, of which he was convicted, and which conviction was afterwards affirmed by this court (*Dunn v. State,* 14 Okla. Cr. 452, 172 Pac. 463) ; that the defendant was duly sworn in open court as a witness in his own behalf in said cause; that on the trial of said cause the defendant testified substantially that the two mares alleged to be the subject of the larceny had been purchased by him from an unknown Indian, one whom he had never seen before nor since such purchase of such mares; that on the 21st day of November, 1912, defendant bought the two mares; that he purchased them in the barnyard, or between the barnyard and the house, on a place defendant had rented; that he first saw these mares in the hands of an Indian, who said his name was Elick Bird; that he was a low, heavy-set, dark-skinned Indian, with short hair; that he came up about 8 or 9 o'clock, and Ermon Riley was present; that he did not see him until he was right at him; that he was riding either a light bay or a sorrel horse, stocking-legged horse, and leading the mares; that the Indian and the defendant passed the time of day, and defendant asked the Indian to get down, and he said he understood that defendant was buying horses, and that he had a team to sell; that he asked $300 for them; defendant looked them over, and did not want them at that price; that the Indian turned and rode away, and as he did so defendant offered him $150, and that the Indian came back and said, if defendant had the cash, he would take it; defendant told him he did not have the cash, but would give him a check on the bank at Greenfield, and that if he would come down there

Monday defendant would see that he got the money; that defendant wrote the check out, and it was an overdraft, and gave it to the Indian, who took it; that the Indian asked defendant to put the word "bearer," instead of "order," so that he would not have to be identified; that the defendant took one of the mares then over to his brother-in-law's after the Indian had turned them into the lot and ridden away; that he did not see him any more until Monday; that the Indian came to him at the stockyards in Greenfield, where defendant had the horses, handed him the check, and said he had not got the money on it; that defendant did not recall who was present at the time; that he and the Indian went to the Greenfield State Bank, and defendant went into the bank and got the money on the check for him; that he made his note for the money and gave it to the bank; that the banker paid him the money on the check, and he gave it to the Indian; that the Indian put the name on the check when defendant handed it to him and told him to indorse it; that the Indian remained at Greenfield until he got the money; that after getting the money defendant just walked to the inside door of the bank and handed the money to the Indian; that defendant had got the money from George Matlock; that on the train, when returning to Oklahoma, Fletcher said to him (defendant) : "I don't believe you stole these mares, and you don't act like you were guilty, and if you will give me $40 more for my expenses, I will say no more about it, and not prosecute this case;" that the defendant made no investigation to find out whether the Indian owned the mares or not; that he only looked to see if they had the government brand on them, and made no inquiry about any mark on them, or

about any mortgage on them; that this was the first over-draft he ever gave and got an Indian to take.

In the instant case William Fletcher testified that he owned said two mares and as to their loss, about a month previous to the arrest of defendant for the larceny thereof, and that he, together with the sheriff of Blaine county, armed with a warrant for defendant, went to Arkansas, and there found the mares in the possession of the defendant, and that defendant said that he purchased the mares from an Indian and arranged to pay said Fletcher $300 for the mares, of which $40 was paid in cash in Arkansas; that the witness, William Fletcher, the sheriff, and the defendant returned to Oklahoma together, and that the witness did not state on the train, or at any time, to the defendant: "I don't believe you stole these mares, and you don't act like you were guilty, and if you will give me $40 more for my expenses, I will say no more about it, and not prosecute this case."

George Matlock testified that he was the president of the Greenfield State Bank; that he remembered the occasion of Jack Dunn loading and shipping from Greenfield a carload of horses on November 25, 1912; that he was in the bank attending to business; that he did not remember seeing any Indian in there that day with Jack Dunn, nor did he see one indorse a check in company with Jack Dunn that day; that he did not think he ever knew an Indian by the name of Elick Bird; that he did not see Jack Dunn give a check for $150 to an Indian that day; that the check exhibited to witness looks like the check that was presented to the bank that day; that Dunn brought that check to the bank, and at that time witness noticed no Indian with him; that he gave Mr. Dunn the money on the check, and did not see him give any money to an

Indian there, but defendant took the money and put it in his pocket and started out of the bank; that this transaction was in the morning, about 9 or 10 o'clock, and then in the evening, about 2 or 3 o'clock, he came back there, brought back $150, and left it there; he did not tell the witness that it was the same money; that Jack Dunn came in and said he had bought a team from an Indian, and wanted the money to pay for it; that witness told him that he did not know why he wanted to do that; that he owed the bank enough already, and already had a carload of horses to ship; that defendant then told witness that he had already issued the check for the Indian, and witness asked him where the check was, and he said he had it in his pocket, and he said he had told the Indian that he did not have any money in the bank, and that he would have to make some arrangements before paying the check, and had told the Indian, if he would come over to Greenfield that day, he would make the arrangements and pay the debt; that the witness cashed the check personally and handed defendant the money; that witness went into the banking room and brought the money back into the private office, and, while he did not say there was no Indian there, he did not know; that from defendant's conversation witness inferred that the Indian was either in town, or going to be that day, to get the money; that there had been no Indian in there about a check before that time, and the first time the check was mentioned to him was when Jack Dunn came in.

There were some seven or eight Indians who each testified as to long residence in the neighborhood where the defendant lived, and where the mares were alleged to have been stolen; that they did not know, and had never heard of an Indian by the name of Elick Bird.

There was uncontradicted evidence that the mares, at the time the defendant alleged that he bought them, were of the value of $150 to $175.

There was no evidence whaever as to the indorsement by Elick Bird of the check referred to.

In short, the defense of the defendant rests upon the theory that he honestly bought said mares, and consequently his testimony in regard to the same was true, and when the details of the purchase, as given by the defendant, are shown, it must strike any thinking man as being beyond any possibility of a doubt that he did not make such purchase; his evidence in regard thereto being inherently improbable.

It being shown by the uncontradicted testimony of some seven or eight Indians that no such Indian as Elick Bird was ever known to have lived in the section in which witnesses or defendant lived, and where the mares were stolen, and there being no evidence whatever that the defendant, after having been arrested, sought to find such a person as Elick Bird, we take it as conclusive that the evidence is sufficient to show that Elick Bird was a myth—a part of a fabricated defense.

"In a prosecution for larceny of live stock, the fact of the theft having been proven, the question was whether the defendant stole the cattle, or bought them without notice that they had been stolen. *Held,* the presumption from possession of property, recently stolen, is one of fact, to be drawn or not, as the jury may determine, in connection with and in consideration of all the evidence in the case." *(Davis v. State,* 7 Okla. Cr. 322, 123 Pac. 560; *Slater v. United States,* 1 Okla. Cr. 285, 98 Pac. 110.)

The president of the bank upon which the check was drawn testified that he had never heard of such check un-

til the defendant brought it in there and stated that he had it in his pocket, and that he went into the inner office and gave the money to the defendant, who put it in his pocket, and that he did not see any Indian present with him; that the defendant left the bank, and returned that evening, and brought back the money. In the absence of evidence to the contrary, may it not be reasonably presumed that the said check was manufactured, a mere effort on the part of the defendant to fabricate a defense? We think that such conclusion may be properly reached.

Another pertinent inquiry is the reasonableness of a stranger accepting from a stranger a check, when informed, as the evidence shows the Indian was informed, that there was no money in the bank to meet it, that it was an overdraft, when this is coupled with the fact that there is no evidence to show that the defendant made any inquiry, after his arrest for said larceny, to find and produce Elick Bird, and especially in view of the undenied evidence that the value of the mares at the time of their alleged purchase by defendant was $150 to $175, that when defendant was caught with the mares in Arkansas he, without objection or protest, arranged to pay the owner of said mares $300 for them.

If the defendant had honestly purchased said mares, such purchase would have been a defense to the larceny with which he was charged of said mares, and consequently the defendant's testimony on the trial of the defendant for the larceny of said mares was material. We also think that the evidence sufficiently shows that, at the time the defendant testified in said case of larceny against him that he had bought said mares, he corruptly so testified, knowing that said testimony was false.

Every ingredient of the crime of perjury being shown by the evidence, the court did not err in overruling the demurrer thereto.

The defendant also complains that private counsel was employed in the prosecution of the case; but, it not appearing that the county attorney ever lost control of the case, this contention is without merit. *Reed v. State*, 2 Okla. Cr. 590, 103 Pac. 1043; *Hartgraves v. State*, 5 Okla. Cr. 274, 114 Pac, 343, 33 L. R. A. (N. S.) 568, Ann. Cas. 1912D, 180—which cited cases find support in the decisions of many of the states of the Union.

The defendant further complains of paragraphs 5, 6, 7, 8½, 9, and 10 of the general instructions given by the court, each of which instructions we have carefully examined, and are of the opinion that, when taken as a whole, the instructions are not subject to the contention that the same invade the rights of the defendant.

"The instructions must be considered as a whole, and, when considered all together, if they fairly and correctly state the law applicable to the case, they will be sufficient." *(Updike v. State*, 9 Okla. Cr. 124, 103 Pac. 1107; *Tom Spencer v. State*, 5 Okla. Cr. 7, 113 Pac. 224.)

The defendant requested the giving of instruction No. 1:

"The jury are instructed that any defendant in a criminal case shall be permitted to testify in his own behalf therein, but the failure of any defendant to testify shall not be taken as a circumstance against him, and in this case the jury should not take into consideration the fact that the defendant has failed to testify as a witness in his own behalf, and the jury are further instructed not to allude to this fact in their deliberation in arriving at a verdict"

—and duly excepted to the refusal of the giving of said charge. "The refusal to give this charge was not error." *C. E. Carter v. State,* 6 Okla. Cr. 232, 118 Pac. 264.

The defendant also requested instructions numbered 2 and 3 respectively. Each of said instructions is argumentative, and therefore properly refused.

The motion for a new trial was properly overruled.

Finding no error in the record prejudicial to the substantial rights of the defendant, the judgment of the lower court is in all things affirmed.

DOYLE, P. J., and MATSON, J., concur.