# EUGENE RODDY v. STATE.

No. A-7165.   Opinion Filed April 19, 1930.
Rehearing Denied May 10, 1930.
(287 Pac. 765.)

John L. Ward, for plaintiff in error.

J. Berry King, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was convicted in the district court of Tulsa county of conjoint robbery or robbery with the use of firearms, and was sentenced to confinement in the

state penitentiary at McAlester for a period of 25 years, and to pay the costs of the prosecution. From which sentence and judgment the defendant has appealed.

The evidence on the part of the state tends to show that C. F. Selsor was engaged in the drug business in West Tulsa, Okla.; that said Selsor was alone in the drug store about 2 o'clock the morning of November 9, 1927; two men came to his place of business and held a gun on him and told him to "stick 'em up"; that the language used by the two men who came in was used by the defendant in this case; that the defendant had a revolver of some kind, and, when the witness Selsor held up his hands, the other man who was with the defendant went to the cash register and got about $60 in money; witness Selsor testified he had known the defendant a number of years; that the defendant had a charge account at his store; that defendant wore a mask over his face when he came in, and that after he pointed the gun at the witness he pushed the witness back to the cigar counter and punched him with the gun; the defendant leaned over the cigar case and held the gun on him while the other party that was with him got the money. Witness further testified that while they were in the drug store the mask dropped off the defendant's face, and he positively recognized the defendant.

On cross-examination the attorney for the defendant questioned the witness Selsor and asked him regarding statements he had made, in which he stated he could not recognize either one of the men. Selsor testified he did not tell any one for two or three days after the robbery that one of the parties who robbed him was Eugene Roddy. It is contended by the defendant that the witness Selsor had stated to different parties that he did not recognize either of the parties who had held him up and robbed him.

Selsor says he was undecided for some time as to whether or not he would file a complaint against the defendant.

The prosecuting witness testified that the lights were burning in the store, and that the defendant in this case was within a very few feet of the witness when the mask he had over his face dropped off.

The testimony on behalf of the defendant tends to establish an alibi, in fact, that is the defense made by the defendant, that he was not at the drug store and took no part in the robbery, and denies he knew anything about the robbery, and further tends to show that he was at another place when the robbery was committed. The defendant called several witnesses who testified where they had seen the defendant at certain hours during the evening and night the robbery is alleged to have taken place. The testimony further tends to show a number of witnesses who testified for the defendant were parties who claimed to have been with the defendant on the evening and night of the robbery, and that some of the parties had been associated with the defendant for quite a while, and they were frequently seen evenings around a certain restaurant in the city of Tulsa. The testimony further tends to show that the defendant was a married man, and at the time of the robbery was staying with his mother and stepfather; that his vocation was a cook. Without setting out in detail all of the testimony, the foregoing is in substance the testimony introduced in the case.

Fourteen errors are assigned by the defendant as grounds upon which he insists this case should be reversed. The defendant, prior to the beginning of the trial, filed a demurrer to the information, which was overruled by the court, and defendant excepted, but, as the overruling of the demurrer is not assigned as one of the grounds for a

reversal of this case, we take it the defendant considered there was no merit in his demurrer, and for that reason does not argue the same.

The first question argued by the defendant in his brief is that the defendant was not given a fair and impartial trial by the jury selected from the entire panel as required by law.

The defendant contends that he was deprived of his right to a fair and impartial trial of his peers as provided by the Constitution of the United States and the Constitution of the state of Oklahoma, and the laws of the state of Oklahoma, in that the court denied him the right to select from the entire panel in attendance on the court at the time. In the county of Tulsa it is shown they have four district judges, and four divisions of the district court; that the jurors, when regularly drawn under the provisions of the statute, are used by the different divisions of the court. The record shows that considerable testimony was taken on the question of the selecting of the trial jury. Similar questions to the one raised in this case have been before this court in different forms, in all of which cases the courts have held that the important thing to be considered was, Were the rights of the defendant impaired or prejudiced by the manner in which the jury was drawn, selected, and sworn, and did the manner of selecting and swearing the jury deprive the defendant of a fair and impartial jury to sit in the trial of his case? If by reason of the method of securing the trial jury in this case the defendant was denied any right guaranteed him under the Constitution and laws of this state, then the court should have quashed the panel and ordered a new jury drawn. A substantial compliance with the law in drawing, selecting, and impaneling the jury is sufficient.

In Young v. State, 41 Okla. Cr. 226, 271 Pac. 426, this court in the second paragraph of the syllabus said:

"The statute of this state providing for the impaneling of jurors in criminal cases is not in all particulars mandatory. A substantial compliance will be sufficient where the deviation is not material and has not prevented an accused from having a fair and impartial jury, selected by lot from the entire panel." Michael et al. v. State, 42 Okla. Cr. 124, 274 Pac. 900, and Sanders v. State, 46 Okla. Cr. 293, 287 Pac. 846.

There is no showing in this record that the jurors selected were biased or prejudiced against the defendant, or that the defendant's rights were prejudiced by reason of the jury that was selected to try his case. It is not shown that the defendant, by reason of the jurors being called as they were, examined and impaneled to try his case, did not secure a fair and impartial jury. The challenge of the defendant was without merit, and it was not error for the court to overrule the same. If one division of the district court of Tulsa county was entitled to impanel its jury from the entire number of petit jurors forming the regular panel for the entire term of court it would necessarily follow that the other divisions presided over by the district judges would have to impanel its jurors from open or special venires. We hold that this was not the intent of the lawmakers of the state when the law was passed. To sustain the contention of the defendant would entail a very great expense to the taxpayers of the district No fixed rule can be applied, for the reason a juror may be excused from the regular panel before the examination of the case, and whether or not a juror should be excused before being examined rests in the discretion of the court, and the laws of the state should not be disturbed, unless it it shown that such exercise has been abused to the actual prejudice of the complaining party. Beatty v. State, 5

Okla. Cr. 105, 113 Pac. 237; Mathews v. State, 19 Okla. Cr. 153, 198 Pac. 112.

The defendant cites Grant v. State, 11 Okla. Cr. 396, 114 Pac. 919, and several other authorities in support of his contention that his motion to have the jury selected from the entire panel in attendance on the district court of Tulsa county. A careful reading of the authorities cited by the defendant shows they are not in point.

The defendant insists that the court erred in giving instruction No. 5. In instruction No. 5 the court defined the essential elements of the crime charged in the information. The defendant insists the instruction is abstract, ambiguous, and contradictory (the court, in defining the elements of the crime, used these words: "With the use of firearms or other dangerous weapons"), and that it did not limit the taking of the property by the use of firearms. This instruction was simply defining the elements necessary for the state to establish before the jury would be authorized to convict the defendant. While this instruction may not be drawn as artistically as the defendant thinks it should have been drawn, it substantially and fairly states the essential elements necessary to convict for conjoint robbery or robbery by the use of firearms.

The defendant complains that the court erred in its instruction No. 6, wherein the court tells the jury that the essential elements may be the fear of any unlawful injury, immediate or future, of the person or property of the person from whom said property is taken. This instruction contains nothing to mislead the jury from the facts in this case, and, when taken in connection with all the other instructions, we do not think it injured the defendant or prejudiced the jury against him.

In Hooper v. State, 7 Okla. Cr. 43, 121 Pac. 1087, this court, in the second paragraph of the syllabus, said:

"When an error has been committed upon the trial of a case, it is the duty of this court upon an inspection of the entire record to determine whether or not the defendant suffered any material injury from such error. Unless such injury appears, the error will not be ground for reversal."

The defendant argues at length on several of the court's instructions not being applicable to the facts in this case. After a careful reading of the instructions, and considering them together, we hold that the contention of the defendant as to the instructions of the court being erroneous is not of sufficient merit to warrant the court in reversing the case. The instructions, when considered together, are fair, and substantially covered the law applicable to the facts in this case.

The defendant contends that the court erred in overruling his motion for a new trial and his motion in arrest of judgment, and that the court should have sustained his motion for a new trial because of the misconduct of the jury, and particularly the conduct of the juror Walter Blagg, as appears by affidavit attached to the motion, and as further appears from the testimony of the jurors given in open court before arriving at their verdict; the defendant's position being that the juror Walter Blagg qualified on his voir dire that he had no prejudice against the defendant, and that he was not biased or prejudiced, whereas before they reached their verdict it was shown he did not answer correctly or truthfully. The record discloses that, when the jury had retired to the jury room to consider its verdict, Walter Blagg, one of the jurors, mentioned to the other members that, after the mother of the defendant came in, he recognized her, and also recognized the boy, but had always known him by the name of Sanders; that the jury came into the courtroom, and was there

questioned by the court, and the juror, Walter Blagg, stated to the court:

"Mr. Ward asked if I knew the defendant, and I answered, 'no.' I did not recognize him for the reason I knew him by another name, the name of Sanders. I did not recognize him until after the trial began and his mother came in. Mr. Ward did not ask me if I knew Dr. Selsor; he overlooked that I presume, he did not ask me that question.

"Mr. Ward. The explanation of this juror is very satisfactory to the defendant. I think his purpose was entirely honest, fair and square."

From the record it would seem that, when the question came up in the jury room as to the knowledge the juror Blagg had of the defendant and the prosecuting witness, the jury was brought into court, and there in court, with the consent of all parties, the juror was permitted to state his acquaintance with the defendant, and also the prosecuting witness, and the defendant by his counsel acquiesced in the statements of the juror, and conceded to him an honest purpose.

The jury then returned to the jury room and the verdict returned finding the defendant guilty. We do not think the objection of the defendant on the ground that the juror Blagg was biased or prejudiced possesses merit, or that, by reason of his former acquaintance with either the defendant or prosecuting witness, it prejudiced the rights of the defendant. We think the failure of the defendant to object at the time the jury was brought into the courtroom, and the acquiescence of the defendant in the honesty and integrity of the juror, was sufficient to waive any objection he might have to the juror, and we hold that he did waive it by not objecting at the time if there was any reason for disqualifying the juror because

of his acquaintance with the defendant and prosecuting witness. The defendant accepted the explanation of the juror as satisfactory, and, when the verdict was returned against him, he filed an affidavit of one of the jurors as to what took place in the jury room.

This court has repeatedly held that a juror cannot impeach the verdict of the jury by testimony of any one of the jurors in which questions of the kind complained of herein are discussed. Spencer v. State, 5 Okla. Cr. 7, 113 Pac. 224; Keith v. State, 7 Okla. Cr. 156, 123 Pac. 172.

There are other errors discussed by the defendant, but, after a careful study of the record, we fail to find any error committed by the trial court in admission or rejection of the testimony or in its instruction to the jury that would warrant a reversal of this case. The testimony as to the identity of the defendant is positive, and the jury, after considering all the evidence, found the defendant guilty. Finding no fundamental or prejudicial errors in the record, the judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.