## STATE v. JOHN RICKMIER.[1]

### October 24, 1919.

### No. 21,324.

**Indictment — indorsement of witnesses' names.**

1. Where the grand jury in good faith indorsed on the indictment the names of the witnesses, upon whose evidence it is asserted the indictment was found, the indictment will not be set aside because of the claim that other witnesses were examined. It must be conclusively presumed that the indictment was found on the evidence of the witnesses named.

**Grand larceny — evidence.**

2. The evidence is sufficient to sustain the verdict that the defendant stole property in excess of the value of $25 and that therefore the crime was grand larceny in the second degree.

**Criminal law — circumstantial evidence — charge to jury.**

3. In a criminal prosecution founded on circumstantial evidence, except that the state claims an admission of guilt by an offer of the defendant, after indictment, to return the property alleged to have been stolen if the trouble were dropped, all of which is in dispute, the defendant is entitled to a charge on circumstantial evidence.

Defendant was indicted by the grand jury of Waseca county, charged with the crime of grand larceny in the second degree, tried in the district court for that county before Childress, J., who at the close of the testimony denied defendant's motion for a directed verdict and a jury which found him guilty as charged in the indictment. From the order denying his motion for a new trial and from the judgment of conviction, defendant appealed. Reversed.

*Fred W. Senn* and *Joseph N. Moonan,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, and *Henry M. Gallagher,* County Attorney, for respondent.

[1] Reported in 174 N. W. 529.

DIBELL, J.

The defendant was convicted of grand larceny in the second degree upon an indictment charging him with the stealing of two pigs of the value of $40, the property of one Deverell, and he appeals.

1. At the foot of the indictment were the names of five witnesses sworn and examined before the grand jury. The defendant moved to set aside the indictment and made a showing that his sister was examined as a witness before the grand jury. Her name was not upon the indictment. The court denied the motion and this ruling is assigned as error. The two sections of G. S. 1913 relevant upon this contention are as follows:

"9132. No indictment shall be found without the concurrence of at least twelve grand jurors. When so found, it shall be indorsed, 'A true bill,' and the indorsement signed by the foreman, whether he be one of the twelve concurring or not. If twelve grand jurors shall not concur in finding an indictment or presentment, the charge shall be dismissed, but such dismissal shall not prevent its being again submitted to a grand jury as often as the court shall direct. When an indictment is found, the names of the witnesses examined before the grand jury shall in all cases be inserted at the foot of the indictment, or indorsed thereon, before it shall be presented to the court."

"9180. The indictment shall be set aside by the court in which the defendant is arraigned, upon his motion, in any of the following cases:

"1. When it shall not be found, indorsed, and presented as prescribed in the subdivision relating to grand juries;

"2. When the names of the witnesses examined before the grand jury are not inserted at the foot of the indictment or indorsed thereon."

The defendant urges that these two statutes together made it mandatory upon the court to set the indictment aside. These statutes have been on the books for many years. They have not often been before this court.

In State v. Beebe, 17 Minn. 218 (241), it was held that the affidavit of a grand juror will not be received to impeach the conduct of the grand jury by proving the making of a false indorsement.

In State v. Hawks, 56 Minn. 129, 57 N. W. 455, it was held not necessary to indorse the names of witnesses, who, while other charges were

144 M.—3.

being investigated, may have given evidence material to the charge alleged in the indictment. The court said that the object of the statute was, first, to prevent malicious accusations being made by unknown and secret prosecutors, and, second, that the accused may to some extent be informed what witness he will have to confront at the trial. It was intimated that the omission is one which may be supplied by amendment. The court referred to the "absurdity" of setting aside an indictment on this ground when the very fact of his making such a motion conclusively shows that the defendant already has the very information which the indorsement was designed to furnish him, and it was held that all that the statute requires is that there be indorsed the names of those witnesses who were examined and gave material evidence upon the investigation of the particular charge upon which the indictment was found, and upon whose evidence it was found, and that where the grand jury indorsed only the names of those witnesses who were examined in the investigation of the particular charge against the defendant when it was under consideration "it must be conclusively presumed that the indictment was found exclusively on the evidence of such witnesses."

If there is to be such conclusive presumption in that sort of a case, we see no reason why the same conclusive presumption should not obtain in any case where the names of witnesses are in fact indorsed.

These statutes must be given effect according to their meaning. If the names of no witnesses are indorsed, the statute clearly requires that the indictment be set aside. But suppose 100 witnesses were examined and one was omitted from the indorsement. Is it the intent of this statute that the omission should be fatal to the indictment even though the testimony of the omitted witness was in fact immaterial? Or would the court be required to institute an inquiry to determine the materiality of the evidence of the omitted witness? It seems to us that neither result is contemplated by the statute. In the investigation of a crime many witnesses must of necessity be called who in fact give no consequential testimony. We do not think that the statute means that an indictment is fatally defective where the grand jury in good faith indorses the names of the witnesses whose testimony is considered material and omit the names of immaterial witnesses from the indorsement. Such good faith is always presumed. As held in the Hawks case the statute

requires the indorsement only of the names of material witnesses and when the grand jury in good faith performs this function, and indorses the names of the witnesses upon whose testimony it asserts the indictment was found, "it must be conclusively presumed that the indictment was found exclusively on the evidence of such witnesses."

The views just stated are those of a majority of the court. Justice Quinn and the writer do not concur in them. The argument is made with force, and with authority to support it, that the words "shall in all cases be inserted," in section 9132, requiring the indorsement of the names of the witnesses, are directory, and it is convenient to consider them so; but in their opinion the words, "shall be set aside," in section 9180, stating the result which shall follow from a failure to observe the requirement of section 9132, are a command of the legislature which the courts should obey, and it seems to them that, if the legislature should now seek to express its intent that the indictment should in fact be set aside when the names of witnesses are not in fact indorsed as required, they hardly could use words more apt to express their intent than those which are now held insufficient.

2. We reach the conclusion that the evidence sustains the verdict. Deverell had two red pigs which he kept in a pen on his premises in the outskirts of Waseca. There is evidence tending to prove the following facts: The pen was inclosed with a hog tight woven wire fence. On the afternoon of September 28, 1918, the members of the Deverell family were absent from home. The gate had been left closed. When the family returned in the evening the gate was closed but the pigs were gone. Five weeks later it was discovered that defendant had two red pigs in a pen on his premises a block away. Deverell obtained a search warrant and with the deputy sheriff examined the pigs. He testified that they were his. He said they answered the description of his pigs. In size one was a little larger than the other and this was true of his. He claimed he recognized one by a peculiar scar or ringmark on the nose and said that from seeing them so often he got familiar with their appearance, and, without being able to explain how he could distinguish his own from others of the same kind, he still could do so. The defendant refused at the time of the search to tell where he got the pigs. On the stand he claimed that he bought them from a stranger to him, though he had

seen him before, and who had them crated and in his wagon for sale in town, and who trusted him for a part of the price. He concealed the pigs from his sister, with whom he lived, for a week or more. She insisted on his bringing to her the man from whom he bought them and he claimed that he did so. There is some evidence that he concealed the pigs from others and that he told persons who knew of his having them to tell nobody. There is some evidence, not very satisfactory, that he tried to trade them off to a farmer for other pigs. There is a claim that after the indictment he acceded to a suggestion that he let Deverell have the pigs if the prosecution be stopped. The defendant denied the taking, gave evidence of a purchase of the pigs. He claimed that he had possession of them before September 28, the date of the theft. In this he was corroborated by two or three witnesses. If the pigs were stolen the theft was in daylight and the improbability of such a thing is suggested in behalf of defendant. The defendant denied or offered an explanation of most of the circumstances alleged against him. The identification of the pigs by Deverell is not beyond question. He never chose to assert his ownership by legal proceedings. The defendant kept them and butchered them some five or six weeks after the indictment. The prior record of the defendant was not good and the jury was not required to receive his testimony favorably. The evidence made a question for the jury.

Defendant further claims that it was not shown that the value of the pigs was as much as $25 when stolen, and therefore a verdict of grand larceny in the second degree could not be found. The evidence is far from satisfactory and so the trial court thought. From an examination of it we think that by patching it together the jury might conclude that the value of the pigs was as much as 17 cents per pound and that their combined weight was as much as 150 to 160 pounds. We cannot say that the finding of the jury upon value is not sustained.

3. The defendant requested the following instructions, which were refused:

"19. I charge you that the evidence upon which the state is seeking to convict the defendant in this case consists largely of what is known in law as 'circumstantial evidence.'

"20. In order to warrant a conviction upon circumstantial evidence it is not alone sufficient that said evidence is consistent with the guilt of defendant but it must exclude every other hypothesis."

Both of these requests were refused and error is claimed. We have mentioned that there was evidence claimed by the state to constitute an admission of guilt and we now recur to it. After the indictment of the defendant he went with the deputy sheriff to the store of one Sterling, a tradesman of the city, to secure him as a bondsman. In his testimony the deputy refers to a talk between the defendant and Sterling, which he did not hear. Then he says:

"When they got through Sterling called me over. He wanted me to go to the county attorney and see if they would not drop the case. said that John offered to give him the pigs back if they would drop it and not have any further trouble about it. John was standing there. I asked him if that was so. He said: 'Yes.' "

Sterling testified:

"I don't know as it was exactly at the time he was in there or it was a little later. I know I tried to persuade John—Mr. Rickmier—to turn those hogs back to Mr. Deverell. I told him I thought it would be easiest way to stop the trouble. He said he wouldn't do it because he had bought the pigs and that would intimate he was guilty. I tried to tell him I thought it was the easiest way out of it.

"Q. You say Mr. Rickmier refused to do it?

"A. Yes, sir.

"Q. At any time in any conversation there with Mr. Rickmier in the presence of Mr. Barden did Mr. Rickmier at any time say he would give any pigs back?

"A. Not to my knowledge.

"Q. Did you hear any such conversation?

"A. When I talked to him I know he said he wouldn't do it.

"Q. Why?

"A. He said they were his; he wouldn't turn them back. I tried to advise him to turn them back. I thought it was the easiest way out of it—out of his trouble."

He declined to swear that the proposition to give Deverell the pigs

was not made, or that the defendant did not accede to some such proposition, but said that he thought not. This is a fair, though not complete, statement of Sterling's testimony. It seems that he was a peacemaker and so far as we can gather from his testimony he was frank. He stated further that Deverell had before indicated a willingness to take the pigs and let the trouble drop.

The defendant, referring to his talk with Sterling, said:

"He says the best way to do—Sterling made this remark himself—he says, the best way to do is to get together and drop it if you can.

"Q. He wanted to save you trouble, did he?

"A. He wanted to save trouble. He said it will save trouble if you can drop it. I says: 'I won't do any such a thing as that. It will prove I stole the pigs if I do.'

"Q. Did you tell him at that time that you bought them?

"A. Yes, sir."

The jury was justified in taking this so-called admission, which the defendant denied making, for what it was worth. It was not a particularly strong circumstance. The case was after all substantially one of circumstantial evidence notwithstanding the talk of a settlement of the trouble after the indictment. An instruction upon circumstantial evidence should have been given. It may well enough be that the circumstantial evidence in a case may be of such minor importance that a charge upon it need not be given. This is not such a case. The instruction need not have been given in the precise words of the request, but the defendant was entitled to have the jury's attention called to the circumstantial nature of the testimony and as to the rule applicable to its consideration. The omission may have been inadvertent but the instruction was distinctly asked.

The views stated are those of a majority of the court. Justice Hallam is of the opinion that the refusal was not error. His view is that, where the court charges the jury that guilt must be established beyond a reasonable doubt, a further instruction that the proof must exclude every other hypothesis than that of guilt adds very little of practical value and that probably no juror would recognize a distinction between the two forms of instruction. That some courts have held that failure to give such

instruction is not error, Brown v. State, 7 Okla. Cr. 678, 126 Pac. 263; Jones v. State, 61 Ark. 88, 32 S. W. 81; People v. Holden, 13 Cal. App. 354, 109 Pac. 495; State v. Lapoint, 87 Vt. 115, 88 Atl. 523, 47 L.R.A. (N. S.) 717, Ann. Cas. 1916C, 318, and that we should so hold; that in any event when the case is one partially dependent on circumstantial evidence it is proper to state the law on evidence bearing on that question, but that a failure to do so is not error. Thus where there is direct evidence of an admission or confession by defendant an instruction on the law of circumstantial evidence is not necessary. 16 C. J. 1009; State v. McCord, 237 Mo. 242, 140 S. W. 885; Hannigan v. State, 131 Ala. 29, 31 South. 89; Langdon v. People, 133 Ill. 382, 24 N. E. 874; Villareal v. State, 80 Tex. Cr. R. 133, 189 S. W. 156. One of the requested instructions recited that the evidence was "largely circumstantial." The evidence of the alleged offer of defendant to give the pigs back "if they would drop it and not have any further trouble about it" was more than circumstantial evidence. It was tantamount to an admission of guilt. It was as clearly an admission as that proved in State v. McCord, supra. Defendant himself recognized this when in answer to a question whether he made such an offer he said that he was urged to do so but refused, saying: "It will prove I stole the pigs if I do." For these reasons he is of the opinion that the refusal to give an instruction upon circumstantial evidence was not error which should result in a reversal.

Order reversed.