H. H. Brown, for appellant.

Mac Q. Williamson, Atty. Gen., for the State.

DOYLE, J.   Appellant, John Hart, was convicted in the district court of Love county under Penal Code, § 1931 (21 Okla. St. Ann. § 1435), upon an information in substance charging that appellant John Hart, Jim Hart, Leonard Adams, William McGill, and Otto Adams, in said county on the 26th day of April, 1934, did unlawfully and burglariously break and enter a storehouse, the property of W. M. Balthrop, located in the city of Marietta, in which building were about 240 sacks of corn, the

personal property of Paul Miller, with the felonious intent to take and steal said personal property.

Upon his separate trial the jury returned a verdict finding him guilty as charged in the information and fixing his punishment at imprisonment in the penitentiary for two years. From the judgment rendered in pursuance of the verdict on July 21, 1936, he appeals and assigns as error that the verdict is contrary to the law and the evidence and that the county attorney in his closing argument to the jury made improper remarks prejudicial to the substantial rights of the defendant.

The undisputed facts are that on the date alleged, Paul Miller had a carload of sacked shelled corn stored in the Balthrop warehouse in Marietta. On the night of April 26, 1934, the warehouse was broken into and about 200 sacks, 100 pounds each, of this corn stolen.

The evidence shows that the burglary and the larceny of the corn was discovered by Mr. Miller the following morning. The sheriff of Love county was called and an investigation of the premises made. It appeared that about 200 sacks of the corn had been taken out and hauled away in a truck and trailer; corn had spilled where it had been loaded and along the highway south from Marietta, where it had been hauled. By following the spilled corn, Miller and the officers trailed the same to the house of appellant, arriving there 7 o'clock that morning, where about 60 sacks of the stolen corn were found in his barn. Appellant said he bought the corn and paid for it. The corn was positively identified by Miller and two or three other witnesses as his property and was taken possession of by the sheriff and returned to him.

Minnie May testified that she was living with her sons on the Hart place; that after his arrest she was at his

house, and John Hart and Otto Adams were sitting on the porch; she heard him say he had taken lots of chances, but this was one case he did not see any way out; the only way out he said was he had a friend at Gainesville that had a warehouse; he could take him 10 gallons of whisky, and he would swear he bought the corn from him, and that would be the only way he could get out of this. Another time John Hart told her he was going to Gainesville and see a friend he sold whisky to and who ran a warehouse, and would see if he would swear he got the corn over there.

On the part of the defense, A. W. Mason testified that he met Joe Wood about seven miles south of Marietta, driving a truck loaded with sacked corn, going south on the morning of April 27th, between 7 and 8 o'clock; that he rode with him about a mile; that Wood asked him if he knew any one that wanted to buy corn, and he told him John Hart said he had to buy some, and Wood drove on to John Hart's place.

Oscar Cochran testified that he was at John Hart's place when the sheriff came; that just before that he saw John Hart pay the driver of a truck some money and the man drove off just before the sheriff came; that John Hart lives about eight miles south of Marietta.

John Pierce testified that he lived at Thackerville, met Joe Wood that morning in Thackerville a little after 9 o'clock, and was driving a truck loaded with 40 or 50 sacks of corn. Wood asked him if he needed some corn; he told him he had no money to buy; that he heard Joe Wood was killed while robbing a boxcar down in Texas.

Alf Bentley testified that he lived in Thackerville, was well acquainted with Joe Wood, now dead, and met him that morning one mile south of town; that Wood was

driving a truck, stopped and asked him if he wanted to buy some corn; and he told him no, he was not farming.

Loma Hart, wife of John Hart, testified that Mrs. May did not come to her house and talk to her husband in her presence.

The defendant did not testify as a witness.

At the close of all the evidence the defendant demurred to the same on the ground it was wholly insufficient to support a verdict of guilty.

This is a companion case to those of Jim Hart v. State, 57 Okla. Cr. 372, 48 Pac. (2d) 337; and Otto Adams v. State, 61 Okla. Cr. 5, 65 Pac. (2d) 420.

As to the effect to be given in prosecutions for burglary to proof of possession of property stolen at the time of the burglary in connection with the breaking and entering, it has been held by this court that the fact of possession of property recently stolen, if such possession is unexplained, is a circumstance tending to show that the defendant is guilty of the burglary. In such a case testimony which tends to prove the commission of larceny also tends to prove the commission of the burglary; but the evidence of unexplained possession of recently stolen property would have no more force and weight in such a case than in a case of larceny. In either it is but a circumstance tending to show the guilt of the defendant, if established as a fact by the evidence beyond a reasonable doubt.

The rule which is recognized by the great weight of authority may be stated as follows: There is no presumption of guilt of burglary attaching to the mere possession of stolen property by the defendant, but such fact, if the alleged crime be of recent occurrence, has a tendency to

prove his guilt, and if there be other proved circumstances tending to connect him with the commission of the offense, the fact of possession thus aided, will sustain a conviction. Drew v. State, 61 Okla. Cr. 48, 65 Pac. (2d) 549, and cases cited.

In the companion case of Hart v. State, supra, we held:

"Evidence of possession of the stolen property by defendant soon after the burglary was committed, when supplemented with other facts inconsistent with the idea that the possession was honest, is sufficient to sustain a conviction for burglary."

There is proof of other circumstances which, taken together, are consistent with the theory of appellant's guilt, and inconsistent with his innocence.

In this case the evidence of admissions made by this defendant, and his statement to Mrs. May, were not denied.

While there is some conflict in the testimony, it strongly tends to show the defendant's guilt, and is amply sufficient to support the verdict.

It follows the demurrer to the evidence was properly overruled.

The alleged misconduct of the county attorney in his closing remarks to the jury is based upon a remark as shown by Exhibit A of the motion for new trial.

No objection was made or exception saved to this alleged remark, and, if made, it is not shown in the case-made, except as one of the grounds in the motion for new trial, and for this reason cannot be reviewed. Quitman v. State, 35 Okla. Cr. 245, 250 Pac. 441; Evinger v. State, 57 Okla. Cr. 63, 45 Pac. (2d) 552; Kennamer v. State, 59 Okla. Cr. 146, 57 Pac. (2d) 646.

It appears that the court correctly instructed the jury as to the law applicable to circumstanial evidence.

Our conclusion is that appellant had a fair trial and was properly convicted.

The judgment is therefore affirmed.

DAVENPORT, P. J., and BAREFOOT, J., concur.