## HENRY GRANSBURY v. STATE.

No. A—9509. July 22, 1938.
(81 P. 2d 874.)

A. O. Manning, of Fairview, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Ellis W. Eddy, Co. Atty., of Medford, for the State.

BAREFOOT, J. The defendant was charged with the crime of burglary in Grant county, was tried, convicted of burglary in the second degree, and sentenced to serve a term of four years in the penitentiary, and has appealed.

Defendant's first assignment of error is that the verdict of the jury is contrary to law and the evidence, and the court erred in overruling his demurrer to the evidence offered by the state.

This contention is based principally upon the fact that the evidence relied upon by the state is partially circumstantial, and there was no direct evidence that the defendant was present, or entered the granary which it was claimed was burglarized. The evidence discloses that Sam Halcomb owned a granary located eight miles southwest of Pond Creek, in Grant county, Okla., that there was stored in said granary about 2,800 to 3,000 bushels of wheat; that on Sunday August 8, 1937, he was called and given information with reference to someone having entered his barn and taking his wheat; that about 12 or 1 o'clock, on the afternoon of said date, he went to the granary for the purpose of making an investigation, and found that the granary had been broken into. He noticed where a truck had been backed up to the door and "when he opened the door he found a piece of tin nailed on one of the door boards, and a hole cut out, and a piece of tin slipped in to keep the wheat from running

out"; that the door to the granary was closed but not locked; and that at the time that he left there on Sunday afternoon, August 8, 1937, he left the board with the tin attached inside of the granary. He identified this board at the time of the trial, as being the board which was taken from defendant's truck by the sheriff on Sunday night, August 8, 1937, at the time of his arrest. He notified Mr. Northcutt, the sheriff of Grant county, and he came to his home just about dark on August 8, 1937, and in company with the sheriff they went to the home of Mr. Kuykendall, who lived in close proximity to the granary, for the purpose of securing his services to watch the granary that night. He could not get him to do so, and they then went to the home of Mr. Zickefoose, a son-in-law of Mr. Kuykendall, and who lived a quarter of a mile east. They arrived there at about 11 o'clock at night, and while there received information from Mr. Kuykendall and his daughter that a truck was seen to enter his premises where the barn was located, and after staying there for some time had driven away. He and the sheriff went immediately to the granary, and upon investigation found that a truck had backed up to the granary and that a part of the wheat was gone. He also noticed that the board with the tin on it which he had left there at noon was also gone. He and the sheriff made a careful examination of the tracks, and followed them until they hit the paved highway about two miles west of the granary. They went on two miles further west and defendant was apprehended driving a truck loaded with wheat, and on top of the wheat was found the board and tin as heretofore described. Defendant was arrested and charged as before indicated. The tires taken from his truck were introduced in evidence, and it showed that the tracks at the granary and a place where he went into a ditch at the side of the road were very similar. The defendant stated at the time of his arrest, according to the evidence of Mr. Halcomb and Sheriff Northcutt, that he secured the wheat which was in his possession "from my uncle down by El Reno."

Other witnesses testified to corroborating facts which it is unnecessary to give.

The defendant, testifying in his own behalf, stated that he had planted about 300 acres of wheat during the season of 1936-1937; that the hail had ruined part of it, but he had harvested about one-half of it; that on Saturday, August 7, 1937, about noon he had loaded his Ford V-8 truck with wheat for the purpose of taking it to Enid in Garfield county, and about 70 miles distance, where he had made arrangements with a party working at an elevator and whose name he did not know to exchange it for seed wheat. He arrived at Enid late Saturday afternoon, August 7, 1937, and could not find the party with whom he had made arrangements to exchange the wheat, and after staying there for about two hours started back toward his home with his original load of wheat; that his truck developed engine trouble and he stayed all night at the side of the road just north of Enid; and worked on his car the next day, and with the assistance of others, whose names he could not give, he finally got the engine fixed and was coming home Sunday night when he was arrested, and that the wheat which he had on his truck was his own wheat, and the same wheat he had taken to Enid for the purpose of exchange. His explanation of the possession of the board and tin attached thereto, as heretofore stated, was that he had stopped at an abandoned filling station just before he was arrested, and seeing this board lying on the ground had picked it up and thrown it on his truck. One witness testified for the defendant that he helped him load the wheat on his truck about noon Saturday. Other witnesses testified to his having planted wheat during the season 1936-1937, and to having seen him combining a part of the same during the year.

The state, on rebuttal, offered two witnesses who testified to selling the defendant gasoline in and near the small towns of Amorita and Byron, Alfalfa county, Saturday and Sunday evenings, August 7, and 8, 1937. This evidence was

for the purpose of rebutting the fact that defendant had gone to Enid at 1 p.m., August 7, and for the purpose of showing that he was in Alfalfa county at that time. Defendant denied this testimony.

From the above statement it will readily be seen that there was a conflict in the evidence and this conflict was passed upon by the jury against the defendant. This court has recently passed upon three cases which we think are decisive of this question. They are Jim Hart v. State, 57 Okla. Cr. 372, 48 P. 2d 337, John Hart v. State, 61 Okla. Cr. 224, 67 P. 2d 66, and Adams v. State, 61 Okla. Cr. 5, 65 P. 2d 420. In the case of Jim Hart v. State, supra, it is said (page 338) :

"At the close of the evidence, there was a motion for a directed verdict of acquittal for the reason that the evidence was insufficient to warrant a conviction.

"It is insisted that there was no proper or sufficient evidence connecting this defendant with the burglary or taking of the corn. We think this contention is without substantial merit.

"It has been held by this court, following the rule recognized by the courts generally, that mere possession of property recently stolen is not sufficient to convict the possessor of a larceny of it. Shaw v. State, 13 Okla. Cr. 511, 165 P. 617; Graham v. State, 12 Okla. Cr. 84, 152 P. 136. When, however, this fact is supplemented by other facts inconsistent with the idea that the possession is honest, it then becomes a question of fact for the jury to determine.

"Where the charge is burglary, if property taken from the owner is soon thereafter found in possession of the person charged with the burglarious entry, proof of this fact, together with circumstances showing guilty conduct, is presumptive evidence, not only of the larceny, but also that he made use of the means by which the property was taken from the owner.

"Burglary is one degree removed from larceny; but when the facts in evidence warrant the finding of the larceny, and the surrounding circumstances are such as to show that the larceny could not have been committed with-

out the burglarious entry, the evidence is sufficient to warrant the finding of the burglary also.

"In order to establish defendant's guilt, it was not necessary that any of the witnesses should have seen him or his codefendants in the vicinity of the warehouse about the time the burglary was committed. It rarely happens that perpetrators of an offense, committed in the manner here proven, can be shown by witnesses who saw and recognized the defendants in the act, and resort must therefore ordinarily be had to circumstantial evidence.

"The jury evidently did not believe the explanation made by defendant as to how he came into possession of the stolen corn.

"The rule repeatedly announced by this court is that it has no power to reverse a judgment of conviction upon the ground that the verdict is not supported by the evidence, unless there is no substantial evidence tending to show defendant's guilt, or the evidence fails so far to support the verdict that the fair inference is that the jury must have acted from passion or prejudice. We have set forth a substantial statement of the material testimony introduced by the state, and it is apparent that there is subsantial evidence tending to show defendant's guilt, and we think it is amply sufficient to support the verdict of the jury."

In the case of John Hart v. State, supra, it is said (page 67):

"The rule which is recognized by the great weight of authority may be stated as follows: There is no presumption of guilt of burglary attaching to the mere possession of stolen property by the defendant, but such fact, if the alleged crime be of recent occurrence, has a tendency to prove his guilt, and if there be other proved circumstances tending to connect him with the commission of the offense, the fact of possession thus aided, will sustain a conviction. Drew v. State, 61 Okla. Cr. 48, 65 P. 2d 549, and cases cited."

The facts in the case at bar and in the above cases are very similar. If anything, the facts in the instant case are the stronger. Here the defendant was found in possession of 130 bushels of wheat, driving his own truck, and at a dis-

tance of about four miles from the scene of the burglary, and within a few hours after it was committed. Not only the possession of the wheat was proved, but on defendant's truck were certain instruments which were at the scene of the burglary just a few hours before it was committed. The defendant's statement when arrested that he received the wheat from his uncle east of El Reno, and afterwards changing his story as testified to by him at the time of the trial, and the reasonableness or unreasonableness of his story that he had hauled the wheat from his home in Alfalfa county to Enid, 70 miles distance, for the purpose of exchanging it for seed wheat, were questions to be taken into consideration by the jury. It was up to the jury to say whether or not they believed the evidence offered by the state or the evidence of the defendant. From a reading of the record we are unable to say that the jury were wrong in the conclusions drawn and that the evidence was insufficient to support the verdict.

It is next assigned as error that the court erred in permitting to be introduced incompetent, irrelevant and immaterial evidence over the objection and exception of the defendant. In this connection it is claimed that the court permitted a certain tin chute to be introduced in evidence which was marked "Exhibit D", and which was found at the house of defendant after his arrest, and that no search warrant was had in securing the same. A careful examination of the record reveals that while certain questions were asked about this tin chute it does not show that it was introduced in evidence by the state. When the county attorney offered the different exhibits in evidence, "Exhibit D", was omitted. The court reporter placed a picture of the same in the record along with other exhibits but the record shows that it was not introduced. We find no substantial error of the court in its action in this matter.

It is next contended that the court erred in giving instruction No. 6, which was as follows:

"The jury are informed that in this action the state, to establish the commission of the offense charged in the information, relies wholly upon circumstantial evidence.

"In this connection, you are instructed that the circumstances relied upon and proven must not only be consistent with the guilt of the defendant, but must also be inconsistent with his innocence, and incapable of any other reasonable explanation except that of his guilt.

"It will be your duty to carefully weigh and consider all the facts and circumstances submitted in evidence in this case, and upon consideration thereof, if you find that such facts and circumstances are consistent with the guilt of the defendant and inconsistent with his innocence, and that such facts and circumstances are incapable of any other reasonable explanation except that of his guilt, and the evidence convinces you beyond a reasonable doubt of the defendant's guilt, then and in such event it will be your duty to convict him.

"Upon the other hand, if, after a careful consideration of all of the facts and circumstances submitted in the case you entertain a reasonable doubt of the defendant's guilt, you should acquit him.

"Given in Court. Excepted to by defendant.

"[Signed]                O. C. Wybrant, Judge."

It is earnestly contended by defendant that the above instruction fails to instruct the jury "that the circumstances relied upon to establish the crime charged must be consistent with each other circumstance relied upon by simply instructing the jury that they must be inconsistent with his innocence." In support of this contention the following cases are cited: Tomlinson v. State, 27 Okla. Cr. 429, 228 P. 608; Carney v. State, 29 Okla. Cr. 83, 232 P. 451; Bass v. State, 29 Okla. Cr. 92, 232 P. 955; England v. State, 29 Okla. Cr. 38, 231 P. 1087; Prock v. State, 33 Okla. Cr. 339, 244 P. 54; Sanders v. State, 43 Okla. Cr. 69, 277 P. 605; De Bose v. State, 18 Okla. Cr. 549, 197 P. 176; Inklebarger v. State, 8 Okla. Cr. 316, 127 P. 707; Brown v. State, 12 Okla. Cr. 343,

156 P. 1150. We have carefully read the above cases, also instruction No. 6, given by the court, and also requested instruction No. 2, offered by defendant, and which it is claimed was an exact copy of the approved instruction in the case of Carter v. State, 6 Okla. Cr. 232, 118 P. 264. In the Carter Case the instruction was quoted in the opinion, but no reference was made thereto by the court. The requested instruction offered by defendant quoted from this instruction, but added a paragraph thereto. In the case of Carney v. State, and Prock v. State, the court holds:

"The facts proven must be such as to exclude every reasonable hypothesis inconsistent with the guilt of defendant."

The case of Inklebarger v. State, 8 Okla. Cr. 316, 127 P. 707, Judge Furman, speaking for the court, says:

"In cases of circumstantial evidence, the court should instruct the jury that the facts necessary to establish the conclusion of the guilt of the defendant must be proven by competent evidence and beyond a reasonable doubt; and they must not only be consistent with the guilt of the defendant, but they must exclude, to a moral certainty, every other reasonable hypothesis except that of guilt. That is all that the law requires in such cases."

While the language of instruction No. 6 may not be expressed as well as in the Carter Case, we think it is sufficient under the law as announced by this court, and as applied to the facts in this case. The state does not rely wholly upon circumstantial evidence in the case at bar as stated by the court in the above instruction. There is much direct and positive testimony, and many cases have held, that where there is direct and positive testimony it is unnecessary to give an instruction upon circumstantial evidence; however, we think it is proper and right to define circumstantial evidence where the state relies partially upon same for a conviction. State v. Rickmire, 144 Minn. 32, 174 N.W. 529. Instruction No. 6, given by the court, is not in our opinion in conflict with the law as announced by this court. It em-

braces all the essential elements of a charge on circumstantial evidence, although it may not be as full, or worded as is usually given. Ex parte Jefferies, 7 Okla. Cr. 544, 124 P. 924, 41 L.R.A., N.S., 749; Star v. State, 9 Okla. Cr. 210, 131 P. 542; Davis v. State, 18 Okla. Cr. 112, 193 P. 745; Penrod v. State, 38 Okla. Cr. 46, 258 P. 1052. See, also, State v. Heusack, 189 Mo. 295, 88 S.W. 21; State v. Sharpless, 212 Mo. 176, 111 S.W. 69; Brown v. State, 74 Tex. Cr. R. 356, 169 S.W. 437; Porch v. State, 50 Tex. Cr. R. 335, 99 S.W. 102.

The Legislature of this state passed an act approved April 13, 1937, being article 7, chapter 15, of the Session Laws of 1937, 21 Okla. St. Ann. §§ 1723, 1724, which was as follows:

"Section 1. Any person entering and stealing any money or other thing of value from any house, railroad car, tent, booth or temporary building shall be guilty of larceny from the house. Larceny from the house is declared to be a felony.

"Section 2. Any person convicted of larceny from the house shall be punished by imprisonment in the state penitentiary for a period of time not to exceed five (5) years.

"Section 3. All laws and parts of laws in conflict herewith are hereby repealed."

It is the contention of defendant that the court erred in giving instruction No. 7, which defines burglary in the second degree, section 1931, Okla. Stats. 1931, Okla. St. Ann., tit. 21, § 1435, for the reason that the act of the Legislature above quoted repealed the above section, the same defining burglary in the second degree. No cases are cited by defendant to support this contention. He is content with stating the proposition. There is no direct repeal of any statute mentioned in the act. Repeals by implication are not looked upon with favor. We do not think it was the intention of the Legislature to repeal section 1931, Okla. Stats. 1931, Okla. St. Ann., tit. 21, sec. 1435, by the enactment of the above law. We rather think it was the intention, by the

enactment thereof, to make it a felony for any person who committed larceny in any house, railroad car, tent, booth or other temporary building, regardless of the amount taken. This, the same as the statute making it a felony to commit larceny from the person in the nighttime, regardless of the amount. Section 2260, Okla. Stats. 1931, Okla. St. Ann., tit. 21, § 1708. It being the intention of the Legislature to make the same a felony whether there was burglarious breaking or not. For this reason the contention of defendant cannot be sustained.

We are, therefore, of the opinion that the judgment of the district court of Grant county should be affirmed.

DAVENPORT, P. J., and DOYLE, J., concur.