## McCOIN v. STATE.

No. A-11443. Jan. 23, 1952.

(240 P. 2d 452.)

Preston Moore, Stillwater, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Alvy K. McCoin, was charged by an information filed in the district court of Payne county with the crime of larceny of domestic fowls; was tried; convicted; and pursuant to the verdict of the jury was sentenced to serve a term of two months imprisonment in the county jail and pay a fine of $200 and costs; and has appealed.

The principal contention presented in the brief of the defendant is that the evidence was insufficient to sustain the conviction, which requires us to give a summary of the evidence.

Elmer T. Judge, the complaining witness, testified that he lived in Perkins but owned a farm south of Stillwater where he kept about 32 white chickens. He would drive to his farm daily for the purpose of feeding his chickens. About 5:00 p. m. on December 8, 1948, he fed the chickens. The following day when he returned to the chicken farm all of his chickens but four were gone. These four were chickens that roosted in the barn. The other 28 chickens which were stolen stayed in the brooder house. An investigation disclosed also that two wheels and tires were gone from a trailer and a garden hose and shovel were missing. Joe Bradley, the undersheriff, came down the following morning and took some plaster of paris casts of some strange footprints that were at the poultry houses. These footprints were around the barn, out to the trailer there were several prints, and then they led to the first chicken house, back to the window of the brooder house,

and into the brooder house. One track was very plain inside of the brooder house. An empty Acme beer can was found by the barn. The following morning he went with the officers to the home of Alvin Dunkin and found six of his white chickens that were in a small bunch by themselves. They found some Acme Beer cans in the Dunkin yard and one can in a car which belonged to one Opal Williams. There were also several white chicken feathers and some chicken manure in the Williams' car. He later saw a wheel, tire and hose in the sheriff's office, which he identified as the ones which had been stolen from his place.

Joe Bradley, undersheriff, testified that he was notified by Elmer Judge of the theft of his chickens on December 9, 1948, and went to the farm the following morning. He saw some shoe tracks and noticed a couple of wheels missing from a trailer. He took some impressions of the tracks and made plaster of paris casts of the prints. He identified one of the casts which had been made and it was admitted in evidence. One of these tracks was inside of the brooder house. He went to Cushing and talked to the defendant and then went to defendant's room. The defendant showed him some shoes but they were not the ones he wanted. He looked under defendant's bed and found a pair of shoes which fitted the tracks at the Judge farm. The shoes were identified and introduced in evidence. The witness pointed out a small white rubber patch in the heels of the shoes which matched the impression in the plaster of paris print which he had prepared. The witness saw a print exactly like that in the brooder house. He placed defendant in jail in Stillwater and had a conversation with him there in the presence of the assistant county attorney, in which defendant said that he had driven Mrs. Williams' car on December 9th and had taken it into Cushing but had gone back to Alvin Dunkin's that night. The officers and Mr. Judge then went back to the Dunkin place. Dunkin was not there but Mrs. Dunkin and Mrs. Williams were there. They saw some white chickens off to themselves that they took back to Mr. Judge's farm and when they were let out of the car they ran to a bucket of water and then to the brooker house where they began feeding. They found some white chicken feathers and some chicken manure in the back seat of the Williams' car. He later found the tire and hose of Mr. Judge's at the defendant's father's place. They were about a quarter of a mile north and a bit west. He also found some empty Acme Beer cans on Mr. Judge's farm and also at Dunkin's.

Ralph White, a deputy sheriff, assisted Mr. Bradley in the investigation, and his testimony was substantially the same as that of Mr. Bradley.

On behalf of the defendant, Mrs. Opal Williams testified that she was employed at the hospital in Cushing and had been keeping company with the defendant for a long period of time. Her work hours were from 11:00 a. m. to 7:00 p. m. Mr. and Mrs. Long stayed at her house and Mrs. Long took care of the house and cooked meals for her. She has a son, Daryl. On the night of December 8, 1948, she, the defendant and Mrs. Long went to the "33 Club" in Cushing. They arrived there between 8 and 9 o'clock and stayed until it closed. They then went to her home and all of them slept there, and Mr. McCoin slept with her son. She was present at Dunkin's when Mr. Bradley opened her car door and picked up a chicken feather and said, "Here is the evidence". She did not see but one chicken feather and it could have been left there by reason of the fact that she occasionally buys a chicken at the poultry house and takes it home and dresses it herself.

Mrs. Irene Long testified to substantially the same facts as Mrs. Williams about being at the "33 Club" on the night of December 8, 1948, with defendant, and that he slept at the Williams' home that night.

Daryl Williams, son of Mrs. Opal Williams, also testified that the defendant slept with him there at his mother's home the night of December 8, 1948. Mrs.

Louis Horaney and Clarence McGinty testiifed to seeing the defendant at the "33 Club" in Cushing the night of December 8th.

The defendant testified that he was born and reared in Payne county; that he was thirty-four years of age and had lived in Payne county all of his life except forty-two months spent in the army. In December, 1948, he was working for Reed's Decorating Company in Stillwater. The afternoon of Saturday, December 8th, he had driven Mrs. Opal Williams' car to Stillwater to get his pay check. Alvin Dunkin, the codefendant, rode with him. They started home about 2:30. On the way to Alvin's place he had a flat in front of Mr. Judge's place. They went up to the house and knocked on the door but there was no one at home, so they walked around the place to see if they could find a jack. They could not find one. They then walked across the road to the John Williams' home and used a telephone to call Mehan and had Mrs. Dunkin bring out a tire to them. He went into Stillwater to the White Service Station and borrowed a jack and bought a tire. He then returned to Cushing and got there about 5:30. After cleaning up he drove to the hospital to get Mrs. Williams. They then drove to her home where she changed clothes and then she, Mrs. Long and defendant went to the "33 Club" and stayed there until it closed about midnight. He then returned to the Williams' home and slept in bed with Daryl Williams the remainder of the night. He did not steal any chickens and had nothing to do with stealing any of the chickens. He has never been convicted of any felony, nor of a violation of the prohibitory laws. He did not go into the brooder house.

John Williams testified that he lived five miles south of Stillwater on highway No. 40; that on December 8th the defendant and another man came to his house to use the telephone. He heard them call Mehan for a new tire. Their car was stopped about 200 or 300 yards from his place on the Mehan road.

This case is another one of those very close cases in which the verdict of the jury might reasonably have been for either the state or the defendant. The state made a prima facie case against the accused. They showed that he and Dunkin were together at the home of Judge at about the time the chickens were stolen. The footprints of the parties were there on the premises and one of the tracks made by defendant's shoes, according to the testimony of the officers, was inside of the brooder house. The defendant admitted making some tracks around the place but specifically denied that he was ever in the brooder house. This one bit of evidence probably did more to bring about his conviction than any other evidence. Another strong incriminating circumstance was the finding of the white chicken feathers and the chicken manure in the Williams' car. No one else even under the testimony of defendant had possession of the Williams' car during the period of time within which the chickens were stolen. Several of the Judge chickens were found at Dunkin's place and the stolen wheel, tire, and hose were found at defendant's father's place.

The state introduced sufficient facts to make a prima facie case of guilt against the defendant. The defendant's explanation of his tracks at the Judge farm and his alibi witnesses, which showed his presence the night of December 8th, presented issues for the determination of the jury. It could not be contended that the state had failed to introduce sufficient evidence to sustain the conviction at the time the state rested its case. The weight to be given to the evidence of the defendant were matters for the jury to consider.

Complaint is made in defendant's brief of the instructions which were given, and particularly with reference to instruction No. 6. Instruction No. 6 is the approved form of instruction which we have recommended that trial courts use in the trial of cases where the evidence of the state is wholly circumstantial. Gransbury v. State, 64 Okla. Cr. 408, 81 P. 2d 874; Inklebarger et al. v. State, 8 Okla.

Cr. 316, 127 P. 707; Jackson v. State, 22 Okla. Cr. 338, 211 P. 1066. Counsel do not point out in any particular where the instruction which was given was defective and no authority is cited to sustain their contention.

We have carefully examined all of the instructions which were given and they are substantially correct statements of the law applicable to the issues before the jury.

The judgment is affirmed.

BRETT, P. J., concurs.